## SHAW'S, Inc., v. WILSON-JONES CO.
### No. 7015.

Circuit Court of Appeals, Third Circuit.
June 28, 1939.

Geo. P. Williams, Jr., and Orr, Hall & Williams, all of Philadelphia, Pa., for appellant.

John Sailer, Philip L. Leidy, and Frederick H. Spotts, all of Philadelphia, Pa. (Pepper, Bodine, Stokes & Schoch, of Philadelphia, Pa., of counsel), for appellee.

Before BIGGS, MARIS, and CLARK, Circuit Judges.

BIGGS, Circuit Judge.

Shaw's, Inc., the appellant, a Pennsylvania corporation, filed suit in the court below against Wilson-Jones Company, the appellee, a Massachusetts corporation, and sought treble damages pursuant to the provisions of Section 4 of the Clayton Act, 38 Stat. 731 (15 U.S.C.A. § 15). In its complaint the appellant alleges that the appellee unlawfully discriminated in price against the appellant in violation of the provisions of Section 2(a) of the Clayton Act, 38 Stat. 730, as amended by the Robinson-Patman Act, § 1, 49 Stat. 1526 (15 U. S.C.A. § 13(a).

The appellee filed a motion to dismiss the complaint alleging that it fails to state a cause of action. The court below entered its decree dismissing the complaint. The appeal at bar is from this decree.

It appears from the complaint that the appellant sells supplies required for election purposes and that the appellee manufactures such supplies and sells them to dealers only, the dealers reselling them to ultimate purchasers; that the appellant had purchased such supplies from the appellee for three years prior to happening of the events complained of; that the appellant stated to the appellee its intentions to bid upon a contract to supply the Registration Commission of Philadelphia with certain materials required by the Commission; that the appellee repeatedly promised to give it information concerning prices of the materials required. The complaint goes on to allege that the appellant repeatedly asked the appellee to quote such prices to the appellant; that despite the appellee's promises to quote such prices, five days prior to the day upon which bids were due to the Registration Commission the appellee notified the appellant that it would not quote the appellant prices and refused all information in such respect. The complaint then alleges that the appellee quoted a price to Dunlap Company, a competitor of the appellant's, and to this company only.

Specifically, paragraph 17 of the complaint alleges that " * * * the defendant discriminated in price by refusing to give the same to the plaintiff and instead gave the price thereof to the plaintiff's competitor, Dunlap Company * * * exclusively. The discrimination by the defendant was pursuant to a previously arranged plan for the purpose of preventing, injuring and destroying competition between Dunlap Company and the plaintiff or anyone else in bidding for this equipment to be supplied to the Registration Commission of Philadelphia * * *."

The eighteenth paragraph of the complaint alleges that, "As a result of the discrimination, plaintiff could not and did not make a bid, and the only bidder was the Dunlap Company above mentioned. This discrimination prevented, injured and destroyed competition between plaintiff and Dunlap Company. The discrimination enabled Dunlap Company to be the only and successful bidder at prices considerably more than had been charged corresponding public bodies of this territory, including the counties of Allegheny and Montgomery at or about the same time, for similar comparable equipment."

Paragraph 20 of the complaint alleges that the result of the discrimination practiced by the appellee " * * * was to substantially lessen competition and to tend to create a monopoly in the articles of commerce in question * * *."

Paragraph 22 of the complaint alleges that "Had the price been given plaintiff which was given to Dunlap Company by the defendant, and had the plaintiff been awarded the entire contract by the Registration Commission, plaintiff would have bought said material from the defendant by suitable contract of sale, which would have been entered into between the parties, but said price not having been given by defendant to plaintiff, plaintiff could not bid on the commodities nor buy nor receive them in interstate commerce from defendant, and was discriminated against in that plaintiff lost its chance to do so in response to the advertisement of the said Commission."

Paragraph 23 alleged that there was a substantial lessening of competition and " * * * a tendency to creat a monopoly" as a result of the appellant's conduct "both generally and with respect to this plaintiff", thereby destroying and preventing competition between the appellant and its competitor, the Dunlap Company, and that this conduct of the appellee created a monopoly.

The complaint states that by reason of the foregoing, the appellant was prevented from making a profit and is entitled to damages treble the amount thereof.

## As to the Law.

The portions of Section 2(a) of the Clayton Act, as amended (15 U.S.C.A. § 13(a), immediately pertinent to the issues presented, provide that, "It shall be unlawful for any person engaged in commerce, in the course of such commerce, either directly or indirectly, to discriminate in price between different purchasers of commodities of like grade and quality, *where either or any of the purchases involved in such discrimination are in commerce,* where such commodities are sold for use, consumption, or resale within the United States * * * where the effect of such discrimination may be substantially to lessen competition or tend to create a monopoly in any line of commerce, *or to injure, destroy, or prevent competition with any person who either grants or knowingly receives the benefit of such discrimination, or with customers of either of them:* Provided * * * That nothing herein contained shall prevent persons engaged in selling goods, wares, or merchandise in commerce from selecting their own customers in bona fide transactions and not in restraint of trade * * *".

We have italicized those parts of the language quoted which were embodied in Section 2(a) by the Robinson-Patman Act of June 19, 1936, 49 Stat. 1526.

Five other subsections were added by the amendment referred to. One of these, subsection (e), provides that "It shall be unlawful for any person to discriminate in favor of one purchaser against another purchaser or purchasers of a commodity bought for resale, with or without processing, by contracting to furnish or furnishing, or by contributing to the furnishing of, any services or facilities connected with the processing, handling, sale, or offering for sale of such commodity so purchased upon terms not accorded to all purchasers on proportionally equal terms."

We are concerned with only one question. Has the appellant stated a cause of action against the appellee? The appellant contends that the appellee has discriminated "in price" between different purchasers because the appellant refused to quote prices. The phrase "to discriminate in price", employed in Section 2(a) considered by itself and entirely out of its context, might be deemed to include a refusal to offer a price to a customer upon goods which the latter desired to offer for resale. Such a conclusion is insupportable, however, after consideration of other language of the section. The discrimination in price referred to must be practiced "between different purchasers". Therefore at least two purchases must have taken place. The term purchaser means simply one who purchases, a buyer, a vendee. It does not mean one who seeks to purchase, a person who goes into the market-place for the purpose of purchasing. In other words, it does not mean a prospective purchaser, or one who wishes to purchase, as the appellant contends.

The appellant in its brief lays emphasis upon the fact that the appellee had sold supplies to it in the past and had promised to quote prices so that the appellant might bid upon Registration Commission contract. In short, the appellant contends that it was a customer of the appellee's and therefore a purchaser. Section 2 of the Act was designed, however, to prevent interference with the current of commerce. For the provisions of the Section to be operative, goods or commodities must be in the flow of commerce, or services must have been rendered or have been contracted to be rendered in connection with goods or commodities so placed. We may surmise that if the goods or commodities are not wholly within that flow, they at least must be touched by it, affected by it, so to speak. This we think to be the limitation imposed by Congress. Past purchases or conversations in respect to possible future purchases are insufficient.

The words employed in the section confirm this ruling. As we have stated, subsection (a) uses the term "purchaser". It speaks also of "commodities * * * sold for use * * * or resale", and of "sale" of commodities. The term "customers" is used but once and then only in the excepting proviso of the subsection which serves to prescribe a limitation upon the application of the Act. Again subsection (b) of Section (2) sets forth a rule of proof when it shall have been alleged that there has been discrimination in price or services or facilities "furnished". Subsection (c) treats of the payment or acceptance of commissions, brokerage or other compensation rendered in connection "with the sale or purchase of goods." Subsection (d) relates to payment for services or facilities for processing or "sale" in respect to services or facilities "furnished". Subsection (e) relates to furnishing services or facilities for proc-

essing or handling, and uses the phrase, commodities "bought" for resale.

In the light of the foregoing we think that it is clear that the appellant has not alleged such facts as would constitute a cause of action under the provisions of Section 2(a). Since no goods or commodities were offered to the appellant, the terms of the subsection are not met. The Act does not compel a seller of commodities to offer them to all persons who may wish to bid upon a contract to resell them to a third party. The discrimination in price prohibited by the subsection is discrimination in respect to commodities sold to purchasers.

The course of conduct exhibited by the appellee is not to be commended as exhibiting sound commercial practices, but this conduct is not within the prohibition of subsection (a).

Nor has the appellant stated a cause of action under subsection (e) for the reasons which we have heretofore stated.

In view of what we have said, we deem it unnecessary to discuss the proviso contained in subsection (a) which the appellee contends gives it the right to reject customers as at common law, or to pass upon the question of damages presented by the pleadings.

The judgment of the court below is affirmed.