### CHICAGO SEATING CO. v. S. KARPEN & BROS.

### No. 9871.

United States Court of Appeals
Seventh Circuit.

Nov. 22, 1949.

Byron M. Getzoff, Chicago, Ill., for appellant.

Horace Dawson, George E. Frost, Chicago, Ill., for appellee.

Before KERNER, FINNEGAN and LINDLEY, Circuit Judges.

FINNEGAN, Circuit Judge.

By this appeal it is sought to reverse an order of the District Court which dismissed, on defendant's motion, an amended complaint seeking treble damages for violation of section 2(e) of the Clayton Act as amended by the Robinson-Patman Act, 15 U.S.C.A. § 13(e). Both appellant, Chicago Seating Company, and defendant-appellee, S. Karpen and Bros., are Illinois corporations.

The amended complaint alleged in paragraph one that both plaintiff and defendant are engaged in interstate commerce and that jurisdiction arises under the provisions of section 4 of the Clayton Act, 15 U.S.C.A. § 15. It is then averred that the defendant is engaged in the business of manufacturing upholstered furniture and that its products are nationally known and distributed.

Paragraph 3 charges that the defendant has engaged in a program of negotiating with certain public institutions in order that such institutions, in their building programs as well as in their solicitation of bids for furnishing their buildings, will specify that only certain specially designed items manufactured by it can be used in meeting the specifications of the said public bids; that such specially designed items are not included in defendant's regular price lists or catalogue, and that as a

practical matter such conduct of the defendant excluded the substitution for "such specially designed items" of like items made by other manufacturers.

The complaint then alleges that the plaintiff has, since 1929, been engaged in interstate commerce in the business of furnishing hotels, schools, and other public institutions with furniture and similar accessories; that it has been and continues to be a purchaser of defendant's products. It charges that subsequently to acts of discrimination, alleged to be thereafter set forth in the complaint, it did, on December 15, 1948, order from defendant, and that on said date defendant did accept its orders for furniture manufactured by the defendant.

In paragraph '5 of the complaint section 2(e) of the Clayton Act is set out, and it is averred that since November 23, 1948 the defendant has been discriminating against the plaintiff and in favor of certain of its purchasers for certain of its products *"by contracting to give and furnish, and by giving and furnishing certain services and facilities in connection with the handling, sale or offering for sale of its said products so purchased by its customers not accorded to all such purchasers, including the plaintiff on proportionately equal terms. Specifically the defendant, is favoring certain purchasers, as aforesaid, by furnishing them with prices on certain items specified in the advertised bids of certain public institutions, the prices of said items are not a part of the regular items shown in their catalogue and price list, and that as a direct result and consequence the competitors of the plaintiffs can bid on and thereby secure the business of the said public institutions, whereas the plaintiff, not being informed of the said prices of the defendant's special merchandise was thereby prevented and precluded from competing with other purchasers of defendant's products. The defendant's failure to accord the plaintiff the said service and facilities hereinabove described has substantially lessened the competition and has diverted trade from and caused a competitive disadvantage to*

*the plaintiff."* (Emphasis supplied throughout.)

In paragraph 6 of the complaint it is charged that on November 20, 1948, the defendant in collusion with the University of Oklahoma advertised and solicited bids for the furnishing of its buildings, and that said bids specified certain specially designed units that were to be manufactured by S. Karpen & Bros., that the defendant made prices available to certain of its purchasers; that on or before November 24, 1948, the plaintiff requested the same facilities offered to its competitors; that the defendant advised the plaintiff that, while it would continue to sell plaintiff its regular line of merchandise, it would refrain from furnishing the plaintiff with said prices in order to eliminate the plaintiff from competition; that it would not permit the plaintiff to purchase for resale special products designed for public institutions. It is alleged that as a direct result and consequence of the alleged discrimination against the plaintiff in refusing to furnish the same service and facilities, to-wit *the "prices of the certain special items and privileges of purchasing the same to the plaintiff for the defendant's specially designed products specified in the said bid,"* the plaintiff was unable to compete with its competitors and was thereby deprived of large profits which it otherwise would have made.

The complaint in paragraph 7 alleges that on August 27, 1948, the University of Illinois solicited bids for the furnishing of its buildings; that Karpen specially designed products were specified. It is alleged that, at that time, the defendant did furnish the plaintiff with prices and the privilege of purchasing said items; that as a consequence the plaintiff was awarded the contract by the University of Illinois.

Paragraph 7 alleges that on about December 6, 1948, the University of Illinois solicited from plaintiff and its competitors bids on additional furnishings which included specially designed Karpen products; that on December 8, 1948 and again on December 10, 1948, plaintiff requested that

the defendant furnish it price lists and the privilege of purchase on additional Karpen items; that the defendant refused to quote prices or sell the plaintiff; that as a result and consequence thereof the plaintiff was prevented from bidding and its competitors who received the benefit of such services from the defendant did bid and one of them secured the contract; that plaintiff was thereby deprived of large profits which it would otherwise have made; that plaintiff is in danger of losing future business and to have its standing in the field of public institutions contracts impaired.

Paragraph 9 alleged that plaintiff has suffered actual damages in the sum of $25,000 and claims that by virtue of section 4 of the Clayton Act, as amended, it is entitled to treble damages. Wherefore it asks judgment.

Defendant moved to dismiss the amended complaint on three grounds:

(1) It does not allege facts showing an unlawful price discrimination within the terms of the Clayton Act, as amended;

(2) It does not allege facts showing that plaintiff purchased any goods from the defendant as to which there was any unlawful discrimination within the meaning of the Act; and

(3) It does not allege facts showing that the defendant did anything more than exercise its right under the Act to select its own customers.

Section 2(e) of the Clayton Act, as amended, provides: "Furnishing services or facilities for processing, handling, etc.— It shall be unlawful for any person to discriminate in favor of one purchaser against another purchaser or purchasers of a commodity bought for resale, with or without processing, by contracting to furnish or furnishing, or by contributing to the furnishing of, any services or facilities connected with the processing, handling, sale, or offering for sale of such commodity so purchased upon terms not accorded to all purchasers on proportionally equal terms." Sec. 13(e), Title 15 U.S.C.A.

▉ An examination of the amended complaint shows clearly that the plaintiff is predicating its action upon the defendant's refusal to furnish it a price list of specially designed items of furniture manufactured by the defendant. It is true that the complaint shows in paragraph 7 that on one occasion defendant did furnish to plaintiff prices on such specially designed items; that plaintiff then purchased some of such items and used them in executing a contract it had procured from the University of Illinois. There is no pretense of allegation that in said instance there was any discrimination against the plaintiff. Complaint is made because thereafter defendant refused to sell such specially designed items to plaintiff.

The same claim is found throughout the whole complaint; plaintiff charges that it has been damaged because defendant refused to sell it certain specially designed items. As to such items the plaintiff, except in the single instance noted, never became a purchaser. Since, as we have pointed out, there is no charge of discrimination in the only sale of the special items made to the plaintiff, it follows that there can be no discrimination against plaintiff and in favor of other purchasers of such items.

The case attempted to be stated in appellant's complaint is clearly distinguishable from the cases cited in its brief. In each such case there was not merely an allegation, but there was also proof of discrimination in favor of one purchaser against other purchasers of the same article. In the case at bar there is no allegation of discrimination against plaintiff as a purchaser and in favor of any other purchaser of defendant's items.

▉ It is true that plaintiff does charge that defendant refused to furnish it prices. It is even said that defendant refused to sell to plaintiff. Even if true such charges do not constitute discrimination in favor of one purchaser against others under the provisions of the Clayton Act. Price lists and catalogues are mere invitations to negotiate and do not constitute a service or facility connected with the sale or offering for sale of a commodity. The refusal to furnish them is at most a refusal to negotiate.

As we see it, the laws of the United States do not require that persons engaged in private trade and commerce must deal with everyone. When they do deal they may not discriminate, but they do have the right to choose their customers. The Clayton Act as amended by the Robinson-Patman Act itself provides in section 2(a) "Nothing herein contained shall prevent persons engaged in selling goods, wares, or merchandise in commerce from selecting their own customers in bona fide transactions and not in restraint of trade." Sec. 13(a), Title 15 U.S.C.A.

A trader engaged in private business may exercise his own discretion as to parties with whom he will deal. Federal Trade Commission v. Raymond-Bros-Clark Co., 263 U.S. 565, 44 S.Ct. 162, 68 L.Ed. 448, 30 A.L.R. 1114; United States v. Bausch & Lomb Optical Co., 321 U.S. 707, 64 S.Ct. 805, 88 L.Ed. 1024.

A very similar situation appears in Shaw, Inc. v. Wilson-Jones Co., 3 Cir., 105 F.2d 331. In that case the appellant contended that the appellee has discriminated between different purchasers because the appellee refused to quote prices to appellant and further charged that appellee had quoted prices to a competitor and to him only. The court said, 105 F.2d on page 333:

"* * * The phrase 'to discriminate in price', employed in Section 2(a) considered by itself and entirely out of its context, might be deemed to include a refusal to offer a price to a customer upon goods which the latter desired to offer for resale. Such a conclusion is insupportable, however, after consideration of other language of the section. The discrimination in price referred to must be practiced 'between different purchasers'. Therefore at least two purchases must have taken place. The term purchaser means simply one who purchases, a buyer, a vendee. It does not mean one who seeks to purchase, a person who goes into the market-place for the purpose of purchasing. In other words, it does not mean a prospective purchaser, or one who wishes to purchase, as the appellant contends.

\* \* \* \* \* \*

"In the light of the foregoing we think that it is clear that the appellant has not alleged such facts as would constitute a cause of action under the provisions of Section 2(a). Since no goods or commodities were offered to the appellant, the terms of the subsection are not met. The Act does not compel a seller of commodities to offer them to all persons who may wish to bid upon a contract to resell them to a third party. The discrimination in price prohibited by the subsection is discrimination in respect to commodities sold to purchasers.

"The course of conduct exhibited by the appellee is not to be commended as exhibiting sound commercial practices, but this conduct is not within the prohibition of subsection (a).

"Nor has the appellant stated a cause of action under subsection (e) for the reasons which we have heretofore stated."

In view of the foregoing, we are convinced that the action of the District Court in sustaining defendant's motion to dismiss the complaint was proper. Its judgment is therefore affirmed.