### NAIFEH
### v.
### RONSON ART METAL WORKS, Inc.
#### Civ. No. 5669.

United States District Court
W. D. Oklahoma.
Dec. 9, 1953.

See also D.C., 111 F.Supp. 491.

Foster & Bowen, Oklahoma City, Okl., for plaintiff.

Rainey, Flynn, Green & Anderson, Oklahoma City, Okl., and Lorentz & Stamler, Newark, N. J., for defendant.

WALLACE, District Judge.

The plaintiff, Z. T. Naifeh, an Oklahoma citizen, doing business as Sooner Sales,[1] brings this action against the defendant, Ronson Art Metal Works, Inc., a New Jersey corporation,[2] and charges that the defendant discriminated against the plaintiff in violation of Title 15, U.S. C.A. § 13(a) which provides in part:

"It shall be unlawful for any person engaged in commerce, in the course of such commerce, either directly or indirectly, to discriminate in price between different purchasers of commodities of like grade and quality * * * where the effect of such discrimination may be substantially to lessen competition or tend to create a monopoly in any line of commerce * * *."

and Title 15, U.S.C.A. § 13(e) which provides:[3]

"It shall be unlawful for any person to discriminate in favor of one purchaser against another purchaser or purchasers of a commodity bought for resale * * * by contracting to furnish or furnishing * * * any services or facilities connected with the processing, handling, sale, or offering for sale of such commodity * * *."

The evidence introduced by the plaintiff at the time of trial before the Court, without a jury, established:

1. In the latter part of 1949 Sooner became a distributor of Ronson accessories, in the Oklahoma City trade area; this distributorship, as such, was an informal working agreement whereby Sooner was permitted to purchase for resale Ronson accessories; the distributorship was not absolutely exclusive in character, and each order for purchase from Ronson was submitted contingent upon the approval of the Ronson Home Office in Newark, New Jersey.

2. On July 7, 1950, the Ronson salesman for the Oklahoma City area permitted Sooner to order a substantial number of Ronson lighters, as well as accessories, and the order was subsequently accepted and filled by Ronson.

3. From July 7, 1950, until January of 1952, Sooner distributed to various retailers a substantial quantity of Ronson lighters and accessories in the Oklahoma City trade area; these various retailers were located within a radius of some 75 miles of Oklahoma City.

4. On January 29, 1952, Ronson's sales agent for the Oklahoma City territory notified Sooner that Ronson would no longer permit Sooner to purchase Ronson products for resale; however, later the same day the salesman permitted Sooner to place an order with the assurance the order would be given the same consideration given previous orders.

5. The order of January 29, 1952, together with a number of orders subsequently submitted by Sooner were never accepted and filled by Ronson; however, Ronson did continue to mail to Sooner advertising materials, sales letters and sent Sooner two shipments of replacement gas tanks for distribution to retailers who previously had been furnished with a stock of Ronson lighters by Sooner; and, on one occasion (February 25, 1952) Ronson sent Sooner an order Ronson had received from a retailer in the Sooner trade area and asked Sooner to fill such order.

---

1. Herein referred to as Sooner.
2. Herein referred to as Ronson.
3. Title 15, U.S.C.A. § 13(a) and (e) com-

pose a part of section 2 of the Clayton Act, as amended by the Robinson-Patman Act of 1936.

6. On January 29, 1952, Ronson's sales agent arranged with Consolidated Wholesale Company at Oklahoma City to act as a distributor of Ronson Products and thereafter accepted from Consolidated a number of orders for Ronson products which orders were subsequently filled.

7. On June 9, 1952, the Home Office of Ronson wrote Sooner to the effect: (a) that consistent with its general policy to reduce the number of distributors where coverage was adequate, Ronson was reducing its distribution in the Oklahoma City area, and (b) inasmuch as Ronson products were well covered with distribution by other distributors, Ronson would be "unable to ship" to Sooner any further merchandise.

At the close of the plaintiff's evidence the defendant moved for judgment upon the ground that the evidence failed to disclose a violation of the Clayton Act, as amended, the statute upon which the plaintiff relies. The Court overruled the motion and directed the defendant to proceed with its proof;[4] whereupon the defendant rested without introducing any evidence.

The crux of the plaintiff's position is that the conduct of the parties established the plaintiff as a Ronson distributor and customer; that from January 29, 1952, until shortly after June 9, 1952, Sooner while still in fact a customer of Ronson was forced to compete with Consolidated Wholesale, another customer of Ronson, when Sooner had a depleted and non-representative stock, with popular items either short or not on hand; and, that such disadvantage was a direct result of Ronson's failure to provide Sooner with goods and services necessary to fairly compete with competitors; and, that such discrimination comes within the purview of section 13(a) which makes it unlawful to "either directly or indirectly, to discriminate in price between different purchasers of commodities of like grade and quality" and with subdivision (e) of section 13 which makes it unlawful "to discriminate in favor of one purchaser against another purchaser or purchasers of a commodity bought for resale * * * by contracting to furnish or furnishing * * * any services or facilities connected with the processing, handling, sale, or offering for sale of such commodity."

There is no question but what Ronson deliberately cut out Sooner as one of its distributors, but contrary to counsel for plaintiff's persuasive argument that Ronson's conduct is legally censured by the Clayton Act, as amended, the Court has reached the conclusion that the instant case does not come within the prohibitions of these "price" and "service" discrimination provisions.

Although the Court does not necessarily commend the manner and method used by Ronson in eliminating Sooner as a wholesaler of Ronson products, Ronson's acts were not unlawful.

The pivotal point in the case at bar is whether Ronson in refusing to sell certain products, high in demand, to Sooner at a time when Ronson was selling to a Sooner competitor was guilty of a *price* discrimination between two *purchasers* resulting in giving one purchaser an unfair advantage and tending to substantially lessen competition.

To come within the confines of the statute under consideration there must be a showing of *price* discrimination or price advantage as between two contemporaneous purchasers of "commodities of like grade or quality." The plaintiff has failed to establish a discrimination took place in regard to two purchasers or purchases.

Although this Court is not disposed "to indulge in legalistic and unrealistic

**4.** At the time this motion was overruled the Court said: "There is a very serious question but what the plaintiff has failed to allege and prove a violation of section 2 of the Clayton Act. However, in order to be certain to not mistreat the plaintiff the Court at this time is going to overrule the defendant's motion for judgment."

and unjustifiable hairsplitting" which results in the removal of a case from within the reasonable intent of a legislative act, the Court has an equal antipathy for judicial legislation which through unwarranted inference travels far beyond the original thought and purpose of the Congress.

The Robinson-Patman Amendment to the original Clayton Act was enacted for the express purpose of preventing a sales price discrimination between competitive purchases of commodities where the granted discount was not directly related to the reduced expense of the vendor.

■ As mentioned in Federal Trade Comm. v. Morton Salt Co.:[5]

"The legislative history of the Robinson-Patman Act makes it abundantly clear that Congress considered it to be an evil that a large buyer could secure a competitive advantage over a small buyer solely because of the large buyer's quantity purchasing ability. The Robinson-Patman Act was passed to deprive a large buyer of such advantages except to the extent that a lower price could be justified by reason of a seller's diminished costs due to quantity manufacture, delivery or sale, or by reason of the seller's good faith effort to meet a competitor's equally low price. * * The House Committee Report on the Robinson-Patman Act considered that the Clayton Act's proviso allowing quantity discounts so weakened § 2 'as to render it inadequate,

if not almost a nullity.' (H.Rep.No. 2287, 74th Cong., 2d Sess. 7.) The Committee considered the present Robinson-Patman amendment to § 2 'of great importance.' Its purpose was to limit 'the use of quantity price differentials to the sphere of actual cost differences. Otherwise,' the report continued, 'such differentials would become instruments of favor and privilege and weapons of competitive oppression.' (H.Rep. No. 2287, 74th Cong., 2d Sess. 9.)"

■ The Courts in carrying out the avowed purpose of Congress have in an unbroken line of decisions ruled that for a discrimination to lie within the pale of section 2 of the Clayton Act, as amended, there must be conclusive evidence of at least two purchases, or contracts for purchases, involving two competitors.

As observed in Bruce's Juices v. American Can Co.:[6]

"Moreover, no single sale can violate the Robinson-Patman Act. At least two transactions must take place in order to constitute a discrimination. Thus, a contract may be made today which has no legal defect under the Robinson-Patman Act. A week later, another sale may be made at a different price or at a different discount, and the latter taken into consideration with the former may establish a discrimination."

■ And as stated in Chicago Sugar Co. v. American Sugar Refining Co.:[7]

5. 1947, 334 U.S. 37, 43, 68 S.Ct. 822, 826, 92 L.Ed. 1196.

6. 1946, 330 U.S. 743, 755, 67 S.Ct. 1015, 1021, 91 L.Ed. 1219. Also, see United States v. Borden Co., D.C.Ill.1953, 111 F.Supp. 562, 580 wherein it was said: "The court shall not consider the alleged violations of Section 2(a) of the Clayton Act, as amended, 15 U.S.C.A. § 13(a). That Section prohibits certain discriminations in price between purchasers of commodities of like grade and quality. This court has held that in a suit brought under Section 2(e) of the

Clayton Act, the plaintiff must affirmatively establish the occurrence of two sales; and that unless two sales are shown, the plaintiff cannot prove the alleged discrimination. Chicago Seating Co. v. S. Karpen & Bros., D.C.1949, 83 F.Supp. 409. That construction of Section 2(e) was upheld by the Court of Appeals, 7 Cir., 177 F.2d 863. Further, the Court of Appeals recognized in its opinion that Section 2(a) should be similarly construed."

7. 7 Cir., 1949, 176 F.2d 1, 7.

"* * * There must be proof that a seller has charged one purchaser a higher price for like goods than he charged one or more of the purchaser's competitors. (Citing case.)"

██ In defining a *purchaser* as referred to in this Act care must be taken to distinguish between a purchaser, and one who is merely a past purchaser or prospective purchaser.

Although the Court accepts the theory advanced by plaintiff's counsel that where two competitive purchasers are involved that a complete failure to deliver goods would constitute a *price* discrimination as much as if the goods were delivered at a discriminating price, nevertheless, the plaintiff's case fails for the same reason the plaintiffs were unsuccessful in Shaw's v. Wilson-Jones Co.[8] and in Chicago Seating Co. v. S. Karpen Brothers;[9] that is, at the time complained of the plaintiff was merely a past purchaser seeking to be a future purchaser. In recognizing this distinction the Court in the Shaw's case, supra, said:[10]

"The appellant in its brief lays emphasis upon the fact that the appellee had sold supplies to it in the past and had promised to quote prices so that the appellant might bid upon Registration Commission contract. In short, the appellant contends that it was a customer of the appellee's and therefore a purchaser. Section 2 of the Act was designed, however, to prevent interference with the current of commerce. For the provisions of the Section to be operative, goods or commodities must be in the flow of commerce, or services must have been rendered or have been contracted to be rendered in connection with goods or commodities so placed. We may surmise that if the goods or commodities are not wholly within that flow, they at least must be touched by it, affected by it, so to speak. *This we think to be the limitation imposed by Congress. Past purchases or conversations in respect to possible future purchases are insufficient."* (Emphasis supplied.)

The Court in the Chicago Seating Co. case, supra, acknowledged this same principle when it stated:[11]

"* * * Price lists and catalogues are mere invitations to negotiate and do not constitute a service or facility connected with the sale or offering for sale of a commodity. The refusal to furnish them is at most a refusal to negotiate."

In this connection it is well to note that the laws of the United States do not require a seller to sell to any and all persons wishing to buy.[12] As in all other private contracts there must be a meet-

---

8. 3 Cir., 1939, 105 F.2d 331.

9. 7 Cir., 1949, 177 F.2d 863.

10. Footnote 8, supra, 105 F.2d at page 333. In A. J. Goodman & Son, Inc., v. United Lacquer Mfg. Corp., D.C.Mass. 1949, 81 F.Supp. 890, 892, the Court said: "It is clear that there is an allegation that the prices asked by the defendant from two different prospective buyers is not the same. But Sec. 13(a) deals only with price discrimination between *purchasers.* Here there is only one purchaser, the State of New Hampshire. It is not enough that a prospective purchaser, the plaintiff, would have had to pay a higher price if it did buy. There must be actual sales at two different prices to two different actual buyers. (Citing cases.)" Also, see Sorrentino v. Glen-Gery Shale Brick Corporation, D.C.Pa.1942, 46 F.Supp. 709.

11. Footnote 9, supra, 177 F.2d at page 866.

12. This principle was enunciated in United States v. Colgate & Co., 1918, 250 U.S. 300, 307, 39 S.Ct. 465, 468, 63 L.Ed. 992, when the Court said: "The purpose of the Sherman Act is to prohibit monopolies, contracts and combinations which probably would unduly interfere with the free exercise of their rights by those engaged, or who wish to engage, in trade and commerce—in a word to preserve the right of freedom to trade. In the absence of any purpose to create or maintain a monopoly, the act does not restrict the long recognized right of trader

ing of the minds accompanied by a willingness by both parties to deal. Such was specifically applied to the Act in question when in the Chicago Seating Co. case the Court pointed out:[13]

> "* * * the laws of the United States do not require that persons engaged in private trade and commerce must deal with everyone. When they do deal they may not discriminate, but they do have the right to choose their customers."

■ In the instant case, on all items ordered by Sooner but which were not accepted and delivered by Ronson, Sooner was no more than a would-be or prospective purchaser; under the express terms of each order application Ronson had the right to accept or reject the order;[14] none of the acts of Ronson can be interpreted as establishing a contract for sale followed by a subsequent refusal to deliver in compliance with the contract.

Although previously Sooner had been operating in practical effect as a distributor for Ronson, in the Oklahoma City area, Sooner's legal rights from order to order rose no higher than Ronson's acceptance and delivery of each individual order. Inasmuch as there was no contractual understanding whereby Ronson was bound to fill certain orders when requested by Sooner, Ronson's refusals to accept such orders can in no way be construed as discriminations between two competitive purchasers. Under the loose-knit operating arrangement between Sooner and Ronson, Ronson had the absolute legal right to refuse totally or in part any order submitted by Sooner. Patently, this arrangement may appear to be inequitable; however, this was the arrangement acquiesced in by Sooner. Concededly, Sooner did not have the type of protection afforded a distributor operating under an express agreement where for a specific period of time the manufacturer was contractually bound to make deliveries. However, the sword was one which cut two ways, inasmuch as Sooner was not bound or obligated to Ronson and could have ceased to handle Ronson products at any time and could have promoted a line of merchandise directly competitive to the Ronson line with legal impunity.

Since the plaintiff has failed to establish that at the time of the questioned transactions Sooner was in fact a "purchaser" within the meaning of the Clayton Act, as amended, Sooner has no cause

or manufacturer engaged in an entirely private business, freely to exercise his own independent discretion as to parties with whom he will deal; and, of course, he may announce in advance the circumstances under which he will refuse to sell, * * *"

The Clayton Act as amended by the Robinson-Patman Act itself approves of this principle where in section 2(a) it states: "Nothing [herein] contained * * * shall prevent persons engaged in selling goods, wares, or merchandise in commerce from selecting their own customers, in bona fide transactions and not in restraint of trade". Sec. 13(a), Title 15 U.S.C.A. Cf. Johnson v. J. H. Yost Lumber Co., 8 Cir., 1941, 117 F. 2d 53, 61.

As observed in Camfield Mfg. Co. v. McGraw Elec. Co., D.C.Del.1947, 70 F. Supp. 477, 481: "* * * The complaint simply is defendant will not do business with plaintiff's distributors. In general, it seems a necessary part of our business mores for a manufacturer to have free selection in dealing with its distributors. * * *"

13. Footnote 9, supra, 177 F.2d at page 867. In ruling that a discrimination of "services" under Section 2(e) of the Clayton Act had taken place, Judge L. Hand in Sun Cosmetic Shoppe v. Elizabeth Arden Sales Corp., 2 Cir., 1949, 178 F.2d 150, 152, 13 A.L.R.2d 358, said: "* * * The Act does not undertake to forbid a seller to grant favors to his customers, any more than it undertakes to compel him to grant them; it only insists that the distribution, if any, shall be equal."

14. On all orders submitted by Sooner to the Ronson salesman the following written condition was present: "Orders are not binding upon Ronson Art Metal Works, Inc. until accepted by the Company at its main offices, Newark 2, N. J." (PX–10).

of action arising from said Act, and the defendant is entitled to judgment.

Counsel will please submit a journal entry to conform with this opinion within ten days.