**WINDY CITY CIRCULATING COMPANY, INC., a corporation; Spring & Fall Distributing Company, Inc., a corporation; N & R Sales, Inc., a corporation; and Magazines Unlimited, Inc., a corporation, Plaintiffs,**

v.

**CHARLES LEVY CIRCULATING COMPANY, et al., Defendants.**

No. 81 C 3374.

United States District Court, N.D. Illinois, E.D.

Sept. 24, 1982.

Gordon E. Graham, Holmstrom & Greene, Crystal Lake, Ill., Scott Green, for plaintiffs.

D. Patterson Gloor, A. Jeffrey Seidman, Cassiday, Schade & Gloor, Robert W. Bergstrom, Ronald W. Teeple, John L. Leonard, Bergstrom, Davis & Teeple, Susan A. Henderson, Roger B. Harris, Altheimer & Gray, Kathryn Korn, Frederick J. Artwick, Sidley & Austin, Mary F. Stafford, Gerald B. Mullin, Randall E. Server, Epton, Mullin, Segal & Druth Ltd., Thomas F. Ging, Reuben & Proctor, Earl E. Pollock, Louis C. Keiler, Sonnenschein, Carlin, Nath & Rosenthal, Wilber H. Boies, Barbara J. Leff, McDermott, Will & Emery, Chicago, Ill., Stuart H. Savett, Kohn, Savett, Marion, Kraft, P.C., Philadelphia, Pa., David A. Beale, Perles, Albert, Hirschfeld, Beale & Wohl, Christopher Goff, Satterlee & Stephens, New York City, for defendants.

## MEMORANDUM OPINION AND ORDER

McGARR, Chief Judge.

The plaintiffs in this action, Windy City Circulating Company, Inc. ("Windy City"), Spring & Fall Distributing Company, Inc. ("Spring & Fall"), N & R Sales, Inc. ("N & R"), and Magazines Unlimited, Inc. ("Magazines Unlimited"), are subdistributors of magazines and paperback books in the greater Chicago metropolitan area. The plaintiffs have filed a four-count amended complaint. The national distributor defendants[1] have brought this motion for

---

1. The national distributors bringing this motion are as follows: Select Magazines, Inc., Triangle Publications, Dell Publishing Co., Curtis Publishing Co., Kable News Co., Flynt Distributing Co., Time Distribution Services, Inc., International Circulation Distribution, Inc., CBS, Inc.,

summary judgment as to Counts II and III, the only counts of the complaint directed to them.

Count II alleges, *inter alia,* that these defendants, as national distributors of periodicals and other publications, refused to deal with the plaintiffs and conspired not to sell to the plaintiffs but to deal only with the defendant Charles Levy Circulating Co. ("Levy"), in contravention of sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1 and 2. Count III alleges violations of sections 2(a), 2(c), 2(d) and 2(e) of the Robinson-Patman Act, 15 U.S.C. §§ 13(a), (c), (d) and (e) in that the national distributors discriminated in prices and other terms of sale, in connection with the sale of magazines, periodicals and paperback books, in favor of Levy and against the plaintiffs. Count III alleges further that this allegedly discriminatory conduct constitutes a combination or conspiracy to monopolize or attempt to monopolize in violation of sections 1 and 2 of the Sherman Act.

Briefly stated, the facts of this case are as follows. The plaintiffs are four subdistributors which purchased periodicals and other publications from Hammond News Agency, Inc., a wholesaler, and resold them to retail dealers. Early in 1981, Levy acquired all of the operating assets of Hammond News Agency, Inc. The plaintiffs continued to purchase from what is now a division of Levy known as the Hammond News Agency ("Hammond"). According to the complaint, Hammond will soon cease to operate as a distribution center of Levy and that business information presently contained in Hammond's computer system is being transferred to Levy's computer system.

The plaintiffs distribute periodicals and other publications to retail stores in areas that are also serviced by Levy. As of this time, two of the subdistributor plaintiffs, Windy City and Magazines Unlimited, have ceased doing business. The remaining two, N & R and Spring & Fall, are buying their product on a two-week credit basis.

Several of the national distributor defendants have filed briefs in support of their motion for summary judgment as to Counts II and III, while others have joined wholly or in part in these briefs. For the purposes of this motion, the court will consider these arguments together.

■ In addressing a motion for summary judgment, judgment should be granted when the plaintiffs are unable to adduce "significant probative evidence" to support essential elements of their claims. *First National Bank of Arizona v. Cities Service Co.,* 391 U.S. 253, 289–90, 88 S.Ct. 1575, 1592–93, 20 L.Ed.2d 569 (1968). This is true as much in antitrust cases as it is in any other type of litigation. *See, e.g., Weit v. Continental Illinois National Bank & Trust Co.,* 641 F.2d 457, 464 (7th Cir.1981), *cert. denied,* 455 U.S. 988, 102 S.Ct. 1610, 71 L.Ed.2d 847 (1982). Indeed, "the very nature of antitrust litigation would encourage summary disposition of such cases when permissible." *Lupia v. Stella D'Oro Biscuit Co.,* 586 F.2d 1163, 1167 (7th Cir.1978), *cert. denied,* 440 U.S. 982, 99 S.Ct. 1791, 60 L.Ed.2d 242 (1979).

The national distributor defendants offer several arguments in support of their motion for summary judgment with respect to Count II. They contend that three of the plaintiffs, Spring & Fall, N & R, and Magazines Unlimited, have neither requested nor demanded products from them; therefore, the plaintiffs have not and cannot properly allege a refusal to deal by the national defendants. Moreover, they assert that although there was some communication with Windy City, there has been no refusal to deal on the part of the defendants. The defendants maintain, further, that there is no evidence of any concerted decision or agreement by them not to deal with the plaintiffs nor is there evidence of a conspiracy to monopolize. These arguments will be addressed *seriatim.*

The defendants assert by way of affidavits and deposition testimony that Spring &

and *Warner Publisher Services, Inc.* For the purposes of this motion, they will be referred to

collectively as "the national distributors" or "the national distributor defendants."

Fall, N & R and Magazines Unlimited have never sought, requested or demanded to deal in any way or at any time with any of the national distributor defendants. Without such a request, there can be no claim of a refusal to deal.

The plaintiffs do not refute this argument. They focus instead on the notion that refusal to deal is but one of the allegations set forth in Count II. They insist that the crucial aspect involves the alleged conspiracy by the national distributors in refusing to deliver products because the plaintiffs are in competition with Levy for retail sales accounts.

■ It is well established that a "firm demand and refusal" are necessary elements to establish an actionable refusal to deal. *Products Liability Insurance Agency, Inc., v. Crum & Forster Insurance Co.*, 682 F.2d 660 (7th Cir.1982); *Gulliver Periodicals, Ltd. v. Charles Levy Circulating Co.*, No. 77 C 547 (N.D.Ill. June 3, 1981), slip op. at 4. Unless the antitrust claimant has actually sought to deal with someone and has been turned down, there can be no cognizable claim for refusal to deal. Only then may the court investigate allegations of conspiracy. *See Cleary v. National Distillers & Chemical Corp.*, 505 F.2d 695 (9th Cir.1974). Spring & Fall, N & R, and Magazines Unlimited have set forth no facts to substantiate their allegations of a refusal to deal. Their claims against the national distributor defendants must, therefore, be dismissed.

■ The national distributors also maintain that any communications that occurred between them and Windy City could not be construed as firm refusals to deal as provided under *Cleary*, 505 F.2d at 697. Windy City apparently sent letters to several of the national distributors seeking to do business with them. Each letter referred to the fact that Windy City's supplier, Hammond, had been purchased by a competitor of Windy City's, Levy, so as to place Windy City "on much less favorable terms" for purchasing products. Windy City noted that "[w]e need your products shipped to us direct [sic] on the same terms as...Levy...so that we have the same competitive nature in the same region." The letters ended with the statement that if there were no reply in ten days, Windy City would assume a refusal to deal.

The responses from the defendants varied to a degree, but the crux of each was essentially the same. In their letters, the national distributors noted their satisfaction with their present service but allowed for discussions on the possibility and feasibility of a future business relationship. Some even provided the names of contacts within their organizations. Rather than follow up on these letters, Windy City brought this action.

At best, this correspondence can be characterized as only preliminary negotiations between the parties. There was no firm offer, much less a refusal to deal. Preliminary negotiations, such as these, are insufficient to support an action for refusal to deal. *See Cleary v. National Distillers & Chemical Corp.*, 505 F.2d 695 (9th Cir.1974).

Moreover, the fact that Windy City failed to answer or follow up on the letters from the national distributors further precludes its ability to claim relief. For a "plaintiff has no antitrust claim where its failure to obtain [products] is attributable to its own mistakes or failure to request [the products]." *Dahl, Inc. v. Roy Cooper Co.*, 448 F.2d 17, 19 (9th Cir.1971). *See also Saunders v. National Basketball Association*, 348 F.Supp. 649 (N.D.Ill.1972).

The defendants argue, in the alternative, that even if the letters and the responses to them did amount to a firm demand and refusal, the plaintiffs have failed to present sufficient evidence to support an inference or finding of conspiracy or concerted action by the defendants in refusing to deal with the plaintiffs. They also maintain that the evidence is insufficient to support a claim of attempted monopolization by the national distributors and Levy.

■ "Group boycotts," or concerted refusals to deal are *per se* illegal under the antitrust laws. *Klor's, Inc. v. Broadway Hale Stores, Inc.*, 359 U.S. 207, 79 S.Ct. 705,

3 L.Ed.2d 741 (1959). In addition to evidence of a firm demand and refusal, there must also be evidence of a conspiracy, concerted decision, or agreement by the defendants not to deal with the plaintiffs. *Cleary v. National Distillers & Chemical Corp.,* 505 F.2d 695 (9th Cir.1974); *Gulliver's Periodicals, Ltd. v. Charles Levy Circulating Co.,* No. 77 C 547 (N.D.Ill. June 3, 1981). "Mere refusal by a group of defendants to deal with a plaintiff is not itself sufficient evidence of a conspiracy or concerted conduct." *Id.,* slip op. at 4. At the very least, the plaintiffs must offer evidence of some "joint collaborative action" by the defendants, *United States v. General Motors Corp.,* 384 U.S. 127, 86 S.Ct. 1321, 16 L.Ed.2d 415 (1966), that they affirmatively agreed among themselves not to deal with the plaintiffs. *See First National Bank of Arizona v. Cities Service Co.,* 391 U.S. 253, 280, 88 S.Ct. 1575, 1588, 20 L.Ed.2d 569 (1963).

■ The plaintiffs have failed to present any evidence from which a finder of fact could infer an agreement among the defendants. There is no evidence of any meetings, conversations, memoranda or enforcement mechanisms. The only "facts" offered by the plaintiffs consist of allegations of parallelism, *i.e.,* that the national distributor defendants "acting in parallel" deal with Levy, but allegedly refuse to deal with the plaintiffs.

The court has been unable to find any factual basis to substantiate the plaintiffs' claims. One example offered by the plaintiffs as evidence of a conspiracy refers specifically to the memoranda offered in the context of this motion. The plaintiffs maintain that the decisions of these defendants cannot be construed as unilateral when several of them rely on the affidavit of a vice president of Warner Publisher Services, one of the defendants bringing this motion. According to the plaintiffs, "an inference of conspiracy is heightened" when several defendants adopt the motive and intent testimony of an agent of a codefendant. The plaintiffs propose other arguments of an equally conclusory nature.

Suffice it to say that these are not a foundation on which to base an antitrust suit.

■ In addition to the plaintiffs' inability to present facts sufficient to support the inference of a conspiracy, there are facts supportive of the theory that each defendant could have chosen not to do business with the plaintiffs because of independent and valid business decisions. It is apparently consistent with the nature of the periodical distribution industry, where speed of delivery and accuracy of accounts are essential, for a distributor to use one wholesaler in a given region. *See, e.g., Byars v. Bluff City News Co.,* 609 F.2d 843, 851–52 (6th Cir.1979). The activities of these defendants could indicate nothing more than parallel business behavior. This, standing alone, is insufficient to give rise to an inference of an agreement among the defendants. *Weit v. Continental Illinois National Bank & Trust Co.,* 467 F.Supp. 197, 209 (N.D.Ill.1978), *aff'd.,* 641 F.2d 457 (7th Cir. 1981), *cert. denied,* 455 U.S. 988, 102 S.Ct. 1610, 71 L.Ed.2d 847 (1982); *Lamb's Patio Theatre, Inc. v. Universal Film Exchanges, Inc.,* 582 F.2d 1068, 1070 (7th Cir.1978). For these same reasons, a unilateral refusal to deal cannot constitute a "conspiracy to monopolize" or an "attempt to monopolize" under section 2 of the Sherman Act.

Count III of the amended complaint alleges, *inter alia,* that the defendants violated sections 2(a), 2(c), 2(d) and 2(e) of the Robinson-Patman Act, 15 U.S.C. §§ 13(a), (c), (d) and (e), by discriminating, in favor of Levy and against the plaintiffs, in the price, terms and conditions of trade relating to the sales and distribution of magazines and paperback books. Count III alleges further that these acts constitute a conspiracy to monopolize the wholesale distribution of these periodicals in the greater Chicago metropolitan market, in violation of sections 1 and 2 of the Sherman Act. *See* Amended Complaint, Count III at ¶¶ 22, 23, 27 and 29.

■ Section 2(a) of the Robinson-Patman Act provides that "[i]t shall be unlawful for any person . . . to discriminate in price between different purchasers of commodi-

ties. . . ." 15 U.S.C. § 13(a). It is well established that there can be no violation of section 2(a) unless there have been at least two actual sales by the same seller to different purchasers at different prices to persons in competition with each other with resultant anti-competitive effects. *Bruces's Juices, Inc. v. American Can Co.,* 330 U.S. 743, 755, 67 S.Ct. 1015, 1020, 91 L.Ed. 1219 (1947); *Chicago Seating Co. v. Karpen & Brothers,* 177 F.2d 863, 866–67 (7th Cir. 1949); *H.A.B. Chemical Co. v. Eastman Kodak Co.,* 1980–81 Trade Cas. (CCH) ¶ 63,912 (C.D.Cal.1981).

The national distributor defendants maintain by affidavit and deposition testimony that they have never sold their products to the plaintiffs. Therefore, these defendants assert, the plaintiffs cannot make out a claim under section 2(a).

The plaintiffs offer several arguments in response. One of the plaintiffs, Windy City, contends that it did at one time secure an agreement with the Marvel Comics Group ("Marvel"), a division of Curtis Circulation Company ("Curtis"), for the direct purchase of comic books. Apparently, Marvel later cancelled this agreement. On this basis, Windy City seeks to be deemed a purchaser. *See Harper Plastics, Inc. v. Amoco Chemicals Corp.,* 617 F.2d 468 (7th Cir.1980).

This argument must fail. Windy City does not allege that it paid different prices than Levy paid for the same comics during the period when Windy City was purchasing them from Marvel. Nor does Windy City claim that any discrimination occurred with respect to the sale of comics. According to Windy City's argument, because Marvel ceased to sell it comics, Curtis' failure to sell it magazines constitutes a violation of the Robinson-Patman Act. We cannot accept this reasoning. The allegations that Marvel's decision to stop selling comics to Windy City and Curtis' failure to ever sell to Windy City an entirely different product fail to set forth the essential elements of a claim for price discrimination. *See Bruces's Juices, Inc. v. American Can Co.,* 330 U.S. 743, 67 S.Ct. 1015, 91 L.Ed. 1219 (1947).

The plaintiffs also seek to invoke the indirect purchaser exception to the Robinson-Patman Act. *See American News Co. v. Federal Trade Commission,* 300 F.2d 104 (2d Cir.), *cert. denied,* 371 U.S. 824, 83 S.Ct. 44, 9 L.Ed.2d 64 (1962). In *American News,* the Second Circuit permitted purchasers discriminated against through the agency of middlemen to sue the original seller if they had dealt directly with the buyer and if the original seller had controlled the terms of the sale. This theory was sanctioned by the Supreme Court in *Federal Trade Commission v. Fred Meyer, Inc.,* 390 U.S. 341, 88 S.Ct. 904, 19 L.Ed.2d 1222 (1968). *See also Littlejohn v. Shell Oil Co.,* 483 F.2d 1140 (5th Cir.), *cert. denied,* 414 U.S. 1116, 94 S.Ct. 849, 38 L.Ed.2d 743 (1973).

This argument must also be rejected. In order to maintain their claims under the Robinson-Patman Act, the plaintiffs must establish their roles as indirect purchasers. To satisfy this requirement, the plaintiffs need to show that the national distributors controlled the purchase price paid by the plaintiffs. *FLM Collision Parts, Inc. v. Ford Motor Co.,* 543 F.2d 1019, 1028 (2d Cir.1976), *cert. denied,* 429 U.S. 1097, 97 S.Ct. 1116, 51 L.Ed.2d 545 (1977).

The plaintiffs purchased products, not from the national distributors, but from the national distributors' wholesalers; in this case, Levy. While there is evidence to suggest that at least some of the national distributors require Levy to provide information concerning draw, return and net sales for accounts served, there is nothing to suggest, much less establish, that these defendants control the price Levy charges the plaintiffs for magazines and paperback books. Indeed, the plaintiffs' theory falls in the wake of uncontroverted affidavits filed by several of the defendants swearing that their respective companies do not control Levy's resale prices and terms of sale. *See, e.g.,* Curtis Memo., Aff. of Eisenberg at ¶ 18; International Circulation Distribution, Inc. Memo., Aff. of Herrera at ¶ 5; Kable News Company, Inc. Memo., Aff. of

Getson at ¶¶ 10b and 10c. For these reasons, therefore, the court rejects the plaintiffs' application of the indirect purchaser doctrine.

The national distributor defendants seek judgment in their favor on the remaining Robinson-Patman claims for essentially the same reasons previously articulated in the context of the section 2(a) arguments. Nor do the plaintiffs offer any additional arguments in support of their allegations.

■ With respect to the claim under section 2(c), the "brokerage provision," the plaintiffs allege that the national distributor defendants agreed to make certain payments to an affiliate of Levy's for the transportation of periodicals, the payments for which afford Levy "a further discriminatory price discount or allowance" which is "disguised and concealed." *See* Amended Complaint, Count III, at ¶ 25. The defendants contend that these allegations fail to state a claim under section 2(c) because, *inter alia,* the plaintiffs concede that these payments were for transportation services only. Moreover, to the extent that these allegations seek to support a claim of further price discrimination, the defendants argue that the claim should be dismissed because none of the plaintiffs have ever purchased products from the defendants within the definition of the Robinson-Patman Act. The court agrees with these defendants.

Moreover, the plaintiffs have no cause of action under section 2(e) because that provision also requires that the plaintiffs be deemed purchasers before they can bring an action under that section. *Harper Plastics, Inc. v. Amoco Chemicals Corp.,* 617 F.2d 468 (7th Cir.1980). *See Chicago Seating Co. v. Karpen & Brothers,* 177 F.2d 863, 867 (7th Cir.1949). We have already determined that the plaintiffs cannot be characterized as purchasers within the meaning of the Robinson-Patman Act. Furthermore, the term "customer" as it is employed in section 2(d) has the same meaning as "purchaser" in sections 2(a) and 2(e). *See American News Co. v. Federal Trade Commission,* 300 F.2d 104, 109 (2d Cir.), *cert. denied,* 371 U.S. 824, 83 S.Ct. 44, 9 L.Ed.2d 64 (1962); *Bay*

*City-Abrahams Bros. v. Estee Lauder, Inc.,* 375 F.Supp. 1206, 1218 (S.D.N.Y.1974).

■ Finally, the plaintiffs conclude Count III of their amended complaint by asserting that by virtue of their alleged Robinson-Patman violations, the defendants have conspired to monopolize or conspired to attempt to monopolize the wholesaling and distribution of periodicals. To the extent that Count III alleges a conspiracy to monopolize, we have already determined that there is no allegation of fact from which to infer a conspiracy among the national distributors and Levy. The court also notes that while section 2 of the Sherman Act creates causes of action for attempts to monopolize and conspiracies to monopolize, it does not create a cause of action based on an alleged conspiracy to attempt to monopolize. *Alabama v. Blue Bird Body Co.,* 71 F.R.D. 606, 609 (M.D.Ala. 1976), *aff'd in part, rev'd in part,* 573 F.2d 309 (5th Cir.1978). *See United States v. Dunham Concrete Products, Inc.,* 501 F.2d 80, 82 (5th Cir.1974), *cert. denied,* 421 U.S. 930, 95 S.Ct. 1656, 44 L.Ed.2d 87 (1975). For these reasons, summary judgment is entered in favor of these defendants as to the conspiracy claims in Count III.

In conclusion, the court notes that summary judgment is available in antitrust cases just as it is available in all other types of litigation. *See, e.g., Weit v. Continental Illinois National Bank & Trust Co.,* 641 F.2d 457, 464 (7th Cir.1981). After reviewing the pleadings, affidavits, and deposition testimony presented in the context of this motion, we find that there are no material questions of fact with respect to the national distributor defendants in Counts II and III. We hereby enter judgment in favor of those defendants on Counts II and III of the amended complaint.