876 F.2d 86
 1989-1 Trade Cases 68,638
 Don PIERCE, Cal's Auto Supply Co., Inc., Vega Auto Parts &
Machine, Inc., et al., Plaintiffs-Appellants,
v.
COMMERCIAL WAREHOUSE, DIV. OF THOMPSON AUTOMOTIVE WAREHOUSE,
INC., a Florida Corporation, Parts and Equipment
Distributors, Inc., et al., Defendants-Appellees.
 No. 88-3545.
 United States Court of Appeals,
Eleventh Circuit.
 June 27, 1989.
 
 Britt Whitaker, Tampa, Fla., James F. Ponsoldt, Athens, Ga., for plaintiffs-appellants.
 R. Frederick Melin, Tampa, Fla., for Tampa Brake.
 Edward C. LaRose, Keith R. Rounsaville, Tampa, Fla., for E.M.B. Brake.
 Robert R. Vawter, Jr., Tampa, Fla., for Allied Corp.
 James W. Middleton, Miami, Fla., for the Gates Rubber Co.
 Donald R. Schmidt, Tampa, Fla., for Commercial Warehouse.
 David P. Rosenblatt, James F. Kavanaugh, Jr., Boston, Mass., James Russell Franklin, Michael C. Addison, Tampa, Fla., for Arrow Automotives Industries.
 Thomas D. Yannucci (argued), Jeffrey A. Rosen, James T. O'Neill, Washington, D.C., for Federal Mogul Corp.
 James M. Porter, Miami, Fla., for Wagner Dir., McGraw-Edison.
 Alan D. Watson, St. Petersburg, Fla., for United Equipment Sales, Inc.
 Michael M. Eaton, Washington, D.C., for Fel-Pro, Inc.
 John T. Cusack, Chicago, Ill. for Sealed Power Corp.
 Appeal from the United States District Court for the Middle District of Florida.
 Before RONEY, Chief Judge, HILL, Circuit Judge, and HOWARD*, District Judge.
 PER CURIAM:
 
 
 1
 The six appellants are jobber-wholesalers of automotive parts in the Tampa, Florida area. Appellees are seven nationwide manufacturers and five regional warehouse distributors (WDs) of automotive parts. In the typical line of distribution, manufacturers sell parts to WDs which in turn resell them to jobbers. Jobbers then resell parts to retailers, including automotive garages and retail parts stores.
 
 
 2
 In their complaint, the jobbers claimed that the manufacturers and the WDs respectively violated Sec. 2(a) and Sec. 2(f) of the Robinson-Patman Act.[1] After discovery, both parties moved for summary judgment and stipulated that the motions be limited to the issue of whether the jobbers had purchased products from the manufacturers at prices higher than those paid by the jobbers' competitors. The district court granted summary judgment for defendants, 691 F.Supp. 291 (1988).
 
 
 3
 As the district court stated, the basic purpose of Section 2(a) of the Robinson-Patman Act is to insure that purchasers from a single seller would not be injured by the seller's discriminatory pricing policies. The complaining party must allege and prove that there were two sales made by the same seller to at least two different purchasers at different prices.
 
 
 4
 Appellants do not contend that the manufacturers sold directly to them. Rather, they invoke the indirect purchaser doctrine of Robinson-Patman Act jurisprudence that recognizes an antitrust violation when a manufacturer sells indirectly to a jobber through a compliant intervening distributor at a discriminatory price.[2] Appellants assert that the manufacturers sell to the WDs which then act as dual distributors reselling to both jobbers and retailers. The jobbers insist that the manufacturers control the terms and conditions of the WDs' resales to them; they therefore are indirectly purchasing from the manufacturers which in effect charge one price to the WDs and a higher price to them. They complain that the alleged discriminatory pricing adversely affects their sales to retailers.[3]
 
 
 5
 Appellants failed to produce evidence to establish that any genuine issue of material fact remains to be resolved. Although the manufacturers issue sheets suggesting resale prices to the WDs, the record does not support appellants' allegation that the WDs are compelled to adhere to the sheets or uniformly follow them. The WDs testified that they set the prices at which they resell the parts. Such prices may be higher, lower, or the same as suggested by the manufacturers. Furthermore, on deposition, appellants admitted that they buy parts in volume from the WDs at prices discounted from the suggested prices. Undoubtedly, the WDs find the suggested resale prices useful in determining prices for myriad replacement parts, but there is no evidence that they are consistently followed.
 
 
 6
 Some of the manufacturers have sales agreements with the WDs that they supply. Provisions in some of the contracts, none of which are enforced, allow manufacturers to audit WDs' sales and state that WDs are not eligible for warehouse discounts on goods sold directly to retailers; they do not provide manufacturers with any rights to control the terms and conditions of WDs' sales to jobbers. See Windy City Circulating Co. v. Charles Levy Circulating Co., 550 F.Supp. 960, 966 (N.D.Ill.1982). Appellees further testify that the contracts do not control the WDs' behavior, and that the WDs suffer no retribution if a sales contract is not signed. Appellees insist in affidavits that the manufacturers do not in fact monitor the WDs' sales or in any way urge the WDs to conduct their sales in accordance with terms or conditions set by the manufacturers.
 
 
 7
 Finally, field representatives of the manufacturers directly contact jobbers in undertaking general promotional activities. Contacts by such "missionary men" do not establish that the manufacturers control the resale of their products. Hiram Walker v. A & S Tropical, Inc., 407 F.2d 4, 6-7 (5th Cir.1969), cert. denied, 396 U.S. 901, 90 S.Ct. 212, 24 L.Ed.2d 177 (1969).
 
 
 8
 The record does not indicate that the resales of manufacturers' parts from the WDs to the jobbers were sham sales that in truth and fact were controlled by the manufacturers. The indirect purchaser doctrine is inapplicable; appellants have not made out a viable section 2(a) claim against the manufacturers. Likewise, appellants have failed to set forth a viable section 2(f) claim against the WDs.
 
 
 9
 We have reviewed the judgment of the district court granting summary judgment for appellees and find no error. AFFIRMED.
 
 
 
 *
 Honorable Alex T. Howard, Jr., U.S. District Judge for the Southern District of Alabama, sitting by designation
 
 
 [1]
 Section 2(a) of the Robinson-Patman Act, 15 U.S.C. Sec. 13(a) provides:
 It shall be unlawful for any person engaged in commerce, in the course of such commerce, either directly or indirectly, to discriminate in price between different purchasers of commodities of like grade and quality, where either or any of the purchases involved in such discrimination are in commerce, where such commodities are sold for use, consumption, or resale within the United States or any Territory thereof or the District of Columbia or any insular possession or other place under the jurisdiction of the United States, and where the effect of such discrimination may be substantially to lessen competition or tend to create a monopoly in any line of commerce, or to injure, destroy, or prevent competition with any person who either grants or knowingly receives the benefit of such discrimination, or with customers of either of them: Provided, That nothing herein contained shall prevent differentials which make only due allowance for differences in the cost of manufacture, sale, or delivery resulting from the differing methods or quantities in which such commodities are to such purchasers sold or delivered: Provided, however, That the Federal Trade Commission may, after due investigation and hearing to all interested parties, fix and establish quantity limits, and revise the same as it finds necessary, as to particular commodities or classes of commodities, where it finds that available purchasers in greater quantities are so few as to render differentials on account thereof unjustly discriminatory or promotive of monopoly in any line of commerce; and the foregoing shall then not be construed to permit differentials based on differences in quantities greater than those so fixed and established: And provided further, That nothing herein contained shall prevent persons engaged in selling goods, wares, or merchandise in commerce from selecting their own customers in bona fide transactions and not in restraint of trade: And provided further, That nothing herein contained shall prevent price changes from time to time where in response to changing conditions affecting the market for or the marketability of the goods concerned, such as but not limited to actual or imminent deterioration of perishable goods, obsolescence of seasonal goods, distress sales under court process, or sales in good faith in discontinuance of business in the goods concerned.
 Section 2(f) of the Robinson-Patman Act, 15 U.S.C. Sec. 13(f) provides:
 It shall be unlawful for any person engaged in commerce, in the course of such commerce, knowingly to induce or receive a discrimination in price which is prohibited by this section.
 
 
 [2]
 The indirect purchaser doctrine was described by the Seventh Circuit in Purolator Products, Inc. v. FTC, 352 F.2d 874 (7th Cir.1965), cert. denied, 389 U.S. 1045, 88 S.Ct. 758, 19 L.Ed.2d 837 (1968):
 To ensure fair competition among purchasers from the same seller, the Robinson-Patman Act amendments to the Clayton Act forbade sellers to make price discriminations between purchasers except when justified by economies to the seller. If a seller can control the terms upon which a buyer once removed may purchase the seller's product from the seller's immediate buyer, the buyer once removed is for all practical, economic purposes dealing directly with the seller. If the seller controls the sale, he is responsible for the discrimination in the sale price, if there is such discrimination. If the seller cannot in some manner control the sale between his immediate buyer and a buyer once removed, then he has no power by his own action to prevent an injury to competition. American News Company v. F.T.C., [300 F.2d 104 (2d Cir.), cert. denied, 371 U.S. 824, 83 S.Ct. 44, 9 L.Ed.2d 64 (1962) ].
 Id. at 883. See also, Hiram Walker, Inc. v. A & S Tropical, Inc., 407 F.2d 4 (5th Cir.1969), cert. denied, 396 U.S. 901, 90 S.Ct. 212, 24 L.Ed.2d 177 (1969); Barnosky Oils, Inc. v. Union Oil Co. of Cal., 665 F.2d 74 (6th Cir.1981).
 
 
 [3]
 The record makes clear that the principal concern of the jobbers is that they desire to have exclusive distribution rights to sales to retailers. They wish that the manufacturers would enforce the provisions found in some of the manufacturers' sales contracts with the WDs that prohibit the WD from buying parts at discounted prices and then selling directly to retailers. They bring forth nothing to show that the manufacturers' failure to sustain the typical line of distribution violates federal law