## SULLIVAN v. ASSOCIATED BILLPOSTERS & DISTRIBUTORS OF UNITED STATES et al.

(District Court, S. D. New York. September 30, 1919.)

1. Monopolies ⊚⟹12(2)—Restriction on purchase of lithographs for billposting held restraint on interstate commerce.

A combination between billposters in various states, under which it was agreed that the members would not deal with any lithographers who dealt with any independent billposter, prevented posters from being transported from state to state, except for erection on billboards by the members, and is a restraint on interstate commerce, in violation of the Sherman Anti-Trust Act (Comp. St. §§ 8820–8823, 8827–8830).

⊚⟹For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

2. **Monopolies ⚌12 (2)—Preventing members of association from posting bills for advertisers giving business to others is not restraint on interstate commerce.**

A provision in an agreement between members of a billposter's association, preventing the members of the association from being employed to post bills by advertisers who did not give all their billposting business to the members, is not a restraint on interstate commerce.

3. **Monopolies ⚌28—Plaintiff, injured by restraints on interstate commerce, may recover, though not engaged in such commerce.**

A plaintiff, who has been injured by restraints imposed on interstate commerce by defendants, may recover damages under the Sherman Anti-Trust Act (Comp. St. §§ 8820–8823, 8827–8830), though plaintiff himself is not engaged in interstate commerce.

4. **Monopolies ⚌28—There must be direct relation between restraint on commerce and injuries suffered.**

Before a plaintiff can recover treble damages under the Sherman Anti-Trust Act (Comp. St. §§ 8820–8823, 8827–8830), there must be a direct relation between the restraint on interstate commerce complained of and the injury to plaintiff.

5. **Monopolies ⚌28—Complaint held not to allege billposting solicitor purchased from lithographers.**

A complaint for damages sustained by a billposter, because of restraints on interstate commerce by the billposter's association, which generally alleged that billposters at times purchased directly from the lithographers, does not thereby allege that plaintiff was accustomed to make such purchases, or that the defendants interfered with such business on his part, and therefore does not show injury by restraint on shipment of lithographs in interstate commerce.

6. **Monopolies ⚌28—Statute making decree dissolving combination prima facie evidence in damage suit is only evidence rule.**

The provision of Clayton Act, § 5 (Comp. St. § 8835e), that a decree in a suit by the United States dissolving a combination shall be prima facie evidence in an action for damages as to all matters respecting which the decree would be an estoppel between the parties thereto, is only a rule of evidence, and does not give conclusions of law embodied in the decree more than the force of precedents, nor give the facts therein effect to override allegation of facts in the complaint for damages.

7. **Executors and administrators ⚌444 (3)—Complaint against executors held not to state cause of action against them personally or individually.**

In an action against individuals, who were executors under a will, where the complaint does not allege that the will was ever admitted to probate, nor charge them individually with the acts complained of, does not state a cause of action against them, either in their representative capacity or individually.

8. **Monopolies ⚌12 (2)—Injury to billposting solicitors held not due to restraints on interstate commerce.**

An agreement by members of a billposter's association to accept only business obtained by their licensed solicitors imposes no restraint on interstate commerce, and independent solicitors, who are thereby deprived of their business, cannot recover treble damages under the Sherman Anti-Trust Act (Comp. St. §§ 8820–8823, 8827–8830), though other provisions of the billposter's agreement not affecting plaintiffs did restrain interstate commerce.

9. **Monopolies ⚌28—Complaint for forcing minority stockholders to sell held not to state cause of action under Anti-Trust Act.**

A complaint against a billposter's association and its members, which alleged that certain of the members who controlled a billposting corporation forced plaintiff to sell his minority stock therein, but which did not allege that the corporations in question either joined the combination or were left outside, or that it was any part of the alleged conspiracy to

⚌For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

enable defendants to buy the stock in billposting corporations, states no cause of action for damages under the Sherman Anti-Trust Act (Comp. St. §§ 8820–8823, 8827–8830).

**10. Corporations ⬤⟹121(4)—Complaint held insufficient to recover for sale of stock under duress.**

A complaint alleging that defendants, who were the principal stockholders in corporations, by means of threats to destroy the value of plaintiff's stock in the corporations, and by manipulation and control of the finances thereof, compelled plaintiff to sell his stock to them for an inadequate sum, is insufficient to state a cause of action at common law based on duress.

**11. Corporations ⬤⟹121(2)—Rescission and return of money received essential to recovery for duress.**

Where a minority stockholder was compelled by duress of the controlling stockholders to sell his stock to the majority holders, rescission and offer to return the purchase money is necessary before he can sue for the duress.

At Law. Separate actions by Hannah Sullivan, as assignee of the C. J. Sullivan Advertising Company, by the Charles A. Ramsay Company, by the William H. Rankin Company, and by Joseph D. McManus, against the Associated Billposters and Distributers of the United States and others, to recover treble damages under the Sherman Anti-Trust Act. Demurrers to the complaints sustained.

John B. Johnston, of New York City, for plaintiffs Charles A. Ramsay Co. and William H. Rankin Co.

Rogers & Rogers and W. Bourke Cockran, all of New York City, for plaintiff Sullivan.

W. Bourke Cockran and B. G. Higley, both of New York City (Gustavus A. Rogers and Thomas A. Sherman, both of New York City, of counsel), for plaintiff McManus.

Greene & Hurd, of New York City (Richard T. Greene and Daniel S. Murphy, both of New York City, and E. Allen Frost, of Chicago, Ill., of counsel), for defendants Associated Billposters and Distributors of the United States and Canada, Reardon, Chennell, Haber, Briggs, and Ivan B. Nordhem Company.

Brower, Brower & Brower, of Brooklyn, N. Y. (George V. Brower, of Brooklyn, N. Y., of counsel), for defendants Fulton, Link, and Kings County Trust Co.

AUGUSTUS N. HAND, District Judge. These cases all come up on demurrers by certain of the defendants to the complaints. The common features of the various complaints are as follows:

The posting of bills or posters on billboards is a form of advertising necessary to the successful conduct of various branches of interstate and foreign commerce. This posting involves three different parties and two different transactions. There is the advertiser, who wishes to promote publicity in respect to his business; the lithographer, who manufactures the posters and sends them to the billposter to be placed; and the billposter, who affixes the poster to the billboard. The advertiser contracts with the lithographer to furnish the posters, who then sends them to the advertiser, who employs the billposters to place the posters on the billboards. Both the lithographers and advertisers

are usually located in different states from most of the billboards on which the posters are placed. The lithographers make, not only special forms of posters sold to advertisers, but also standard or stock forms, which they frequently sell directly to the billposters themselves. The purchase and sale of the posters form a large portion of interstate and foreign commerce.

In 1891 a number of billposters located in the various cities of the United States combined to monopolize and control the billposting business throughout the United States and Canada, and formed an association, which thereafter, in 1902, was incorporated and became the first of the defendants named in each of the above actions. All of its officers and directors have participated in the combination. The measures adopted to control interstate and foreign trade and commerce were: (a) Membership confined to one billposter in each town; (b) rules preventing members of the association from dealing with any advertiser who furnished business to a nonmember; (c) agreed schedules of prices for billposting; (d) furnishing members with funds to buy competing plants; (e) since July, 1911, prohibiting members from accepting work from advertisers direct, and permitting them only to accept work through solicitors licensed by the association, who were to pay a fixed license fee of $1,000 and receive a commission of 16⅔ per cent.; (f) threatening to discriminate against lithographers who furnished sample posters to independent billposters or to advertisers desiring to employ independents, by refusing to deal with such lithographers.

The plaintiffs in the Ramsay and Rankin Cases and the plaintiff's assignor in the Sullivan Case were engaged in soliciting billposting business, and are alleged to have been injured in their business by the conduct of the defendants. All the defendants have been proprietors or managers of local billposting concerns in the United States or Canada, except the defendant Logeman, who was secretary of the association, and certain of the defendants, who have been engaged in the business of soliciting and placing orders for billposters at various points throughout the United States.

As a result of the foregoing combination, the number of independent billposters in the United States is alleged to have been reduced to very few, and in most towns it is impossible for any advertiser to purchase posters and to have billposting done, except by members of the association, and interstate commerce in stock posters is stated to have been restrained.

Plaintiffs sue for treble damages under the Sherman Anti-Trust Act (Comp. St. §§ 8820–8823, 8827–8830). Demurrers are interposed to the complaints on the ground that they state no causes of action. Some of the demurring defendants have been engaged in the billposting business, and others in soliciting that business, but all are alleged to have been engaged in the above illegal combination.

[1] It is strongly urged by the defendants that they have merely furnished additional facilities for advertising and have been neither engaged in interstate commerce nor have directly affected it. The direct result and intended purpose of the alleged combination, however,

was to prevent posters from being transported from state to state, except for erection on billboards by the defendants or their agents. Lithographers who dealt with any independent billposter could not deal with them. As a result, the defendants in the billposting business caused a continuous transmission of billposters from state to state, to be placed by members of the association in their respective localities. No advertiser could place his posters, except through their agency. The members of the association were freed from the competition of independent billposters, for, if the advertiser, or the lithographer, dealt with an independent billposter, he could not deal with defendants. Lithographers, who allowed their posters to be placed by independents, would lose the privilege of having their posters placed by the defendants, and could only have their posters handled by independent billposters, who had become few in number and consequently offered limited facilities. The advertiser cannot have his billposters delivered for placing in the various states, unless he arranges his billposting through one of the defendants' solicitors. He cannot even buy his posters from the lithographer, unless he deals with the billposters in the defendant association, for the lithographers cannot allow their posters to be placed by independent posting concerns, because of the risk of boycott by the association. The scheme is not only so devised as to define the agencies which must be employed in placing posters, but is so arranged as to prevent the possibility of purchasing posters from the leading lithographers unless the requisites of the association are met.

[2] Within the doctrine laid down by the Supreme Court in the case of Hopkins v. United States, 171 U. S. 578, 19 Sup. Ct. 40, 43 L. Ed. 290, this arrangement would not constitute a restraint of interstate commerce, in violation of the Sherman Act, if it was limited to preventing members of the association who had purchased posters from the lithographers from being employed by advertisers to post their bills who did not give all their billposting business to such members. But in the complaints under consideration it is stated that billposters not only put up posters for advertisers, but at times themselves purchased sample posters and sold them to, as well as placed them for, advertisers. An agreement among the defendants to purchase from no lithographer who sold sample posters to an independent billposter would clearly be in restraint of interstate commerce. It would be a direct interference with the sale and transmission of posters from one state to another and would violate the Sherman Act. Swift v. United States, 196 U. S. 375, 25 Sup. Ct. 276, 49 L. Ed. 518; Loewe v. Lawlor, 208 U. S. 274, 28 Sup. Ct. 301, 52 L. Ed. 488, 13 Ann. Cas. 815; Marienelli v. United Booking Offices (D. C.) 227 Fed. 165; United States v. Associated Billposters (D. C.) 235 Fed. 540. In Swift v. United States, supra, Mr. Justices Holmes, in commenting upon the case of Hopkins v. United States, supra, said (196 U. S. at page 397, 25 Sup. Ct. 280 [49 L. Ed. 518]):

"All that was decided there was that the local business of commission merchants was not commerce among the states, even if what the brokers were employed to sell was an object of such commerce. The brokers were not like

the defendants before us, themselves the buyers and sellers.· They only furnished certain facilities for the sales."

[3, 4] The question remains, however, whether the plaintiffs are shown to have been injured by any restraint of commerce disclosed by the complaints. Various decisions have held that a plaintiff who has been injured may recover damages, though he has not himself been engaged in interstate commerce. United Copper Securities Co. v. Amalgamated Copper Co., 232 Fed. at page 577, 146 C. C. A. 532. There must, however, be a direct relation between the restraint and the injury.

[5] While it is averred in the Sullivan complaint that he was an independent billposter, as well as a solicitor of this form of advertising, and that he was prevented from making contracts by the defendants, I find no precise allegation that the contracts were purchases of sample posters. I do not think it can be inferred, from the general allegation that billposters at times purchased directly from the lithographers, that Sullivan was accustomed to do this, or that any of the defendants interfered with such a line of business on his part. Consequently it can only be deduced from the pleading that the defendants were engaged in a conspiracy to prevent Sullivan from soliciting billposting business and placing posters. For the reasons that I discuss more at length in connection with the Ramsay and Rankin Cases, such a wrong, if any, is not under the doctrine of the case of Hopkins v. United States, supra, a violation of the Sherman Act. It, at most, would be the result of a common-law conspiracy, and proper allegations of diverse citizenship are lacking. Judge Hough dismissed a complaint for such a cause of action, where the very combination under consideration here was involved, in the unreported case of Hoke v. Beall et al.

[6] The decree of Judge Landis against the defendants granted in a suit in equity by the United States brought to dissolve the Associated Billposters has been pleaded. This has been done because of the provisions of section 5 of the Clayton Act (Comp. St. §.8835e) that such a decree shall be prima facie evidence against the defendants "as to all matters respecting which said * * * decree would be an estoppel as between the parties thereto." This provision is only a rule of evidence. Conclusions of law embodied in the decree could only have the force of precedents, nor can the decree as adjudging facts be taken to override allegations of fact as to the nature of defendants' combination appearing elsewhere in the complaint.

As I have already pointed out, there are features of the Associated Billposters' organization which undoubtedly restrain interstate commerce. Solicitors of billposting, though engaged in a business having no direct relation to interstate commerce, might conspire with organization billposters to prevent the sale of posters to billposters not members of their organization. This would violate the Sherman Act, but it would still be true that the mere agreement by billposters not to place posters for advertisers who employed independent billposters would not be a contract in restraint of interstate commerce. Hopkins v. United States, supra. Nothing in the decree or opinion of Judge Landis tends to show that Sullivan suffered injury arising out of any

agreement in restraint of commerce, and for this reason the general demurrer to the Sullivan complaint must be sustained.

[7] There is a further reason why the Sullivan complaint states no cause of action against Fulton, Link, and Kings County Trust Company, who are the only defendants who demur in that case. They are not made defendants as executors, nor is the allegation made that the will of Barney Link, whose executors they are said to be, was ever admitted to probate. No allegation, moreover, can be discovered connecting them personally with the Associated Billposters. The formal requisites for an action against them in their representative capacity are lacking, and no ground appears for suing them personally. United Press v. Abell, 73 App. Div. 240, 76 N. Y. Supp. 692; Van Cott v. Prentice, 104 N. Y. 45, 10 N. E. 257; Brinkerhoff v. Tiernan, 61 Misc. Rep. 586, 114 N. Y. Supp. 698.

The demurrer in the Sullivan action, because the plaintiff is without legal capacity to sue, is without merit, and is overruled.

[8] The complaints in the Ramsay and Rankin actions are by solicitors for billposting whose licenses have been revoked. Their business is not shown to have had any direct relation to interstate commerce, or to have been affected by any restraints upon it. So far as the association, or its members, were merely employed in soliciting billposting business, the case, both in regard to such activities and their effect upon solicitors who were not members of the association, comes within the decision of Hopkins v. United States, supra. It is true that the Associated Billposters chose to have the business which they secured from advertisers done through solicitors rather than directly. I cannot see, however, that this mode of operation through agents in itself caused any restraint upon trade or commerce between the states. Such restraint arose from the refusal of the combination to deal with independent billposters, or to allow lithographers to do this.

A combination by all the billposters in the country not to employ a certain man to solicit business would not violate the Sherman Act. The arrangement here, though creating certain restraints upon interstate commerce, cannot be different, because the plaintiffs' injury, if any, does not arise from the prohibited features. Viewed in this light, the allegation in the complaints of the findings by Judge Landis, in the Chicago suit, that the defendants violated the Sherman Act can have no bearing upon the Ramsay and Rankin causes of action, for any alleged wrongs could not arise out of such a violation. The demurrers in the Ramsay and Rankin Cases are therefore all sustained.

[9] The only demurrer which remains for consideration is that of Reardon, Chennell, Haber, Briggs, and Ivan B. Nordhem Company in the McManus Case. McManus was neither a billposter, nor solicitor, but a stockholder in three billposting corporations. It is alleged that several of the defendants, who were the principal stockholders in these corporations and controlled them—

"by means of threats to destroy the value of plaintiff's stock in said corporations, and by manipulation and control of the finances and business of said corporations, and by means of other acts and things done in furtherance of their scheme, purpose, and conspiracy to eliminate the plaintiff as a stockholder thereof by destroying the value of plaintiff's holdings in order to pur-

chase same at an unfair, insufficient, and inadequate price, forced and compelled the plaintiff to sell to the defendants his stock in the three corporations for the sum of seven thousand dollars ($7,000)."

As a cause of action for violation of the Sherman Act this must certainly fail. Even if the vague allegations show that some of the defendants obtained plaintiff's stock by duress how did his injury result from any restraint of interstate commerce? Surely this purchase of minority stock interests is not shown to have interfered with competition in billposters, nor can I see how it aided the combination in any way. It is suggested by plaintiff's counsel that the wrong was done by the combined power of the illegal combination. I cannot find that this is alleged, nor do I see that it was any part of the design of the alleged conspiracy to enable certain of the conspirators to buy stock from persons interested in billposting corporations. It is not alleged that the companies in question were either joined to the combination or were at any time left outside, and so injured by the defendants.

[10, 11] As a common-law action based upon duress, I do not find sufficient allegations to show duress. Moreover, if the stock was obtained by duress, rescission and an offer to return the purchase money is necessary before suing. Von Au v. Magenheimer, 126 App. Div. 257, 110 N. Y. Supp. 629. Irrespective of this, however, viewed as a complaint in a common-law action, the allegations of diverse citizenship are fatally defective. The demurrer to the McManus complaint is therefore sustained.

If time to plead in the various actions is desired, it will be fixed at the time of the settlement of the judgments, which should be had on notice.