**SORRENTINO v. GLEN-GERY SHALE BRICK CORPORATION et al.**

No. 2447.

District Court, E. D. Pennsylvania.

Sept. 10, 1942.

710

John Pemberton Jordan, of Philadelphia, Pa., for plaintiff.

Frederic L. Clark (of Shields, Clark, Brown & McCown), of Philadelphia, Pa., for defendants A. S. Squier and Fallston Co.

Herbert A. Speiser (of Speiser & Speiser), of Philadelphia, Pa., for defendant Anna Margolis et al.

Ernest Scott and Philip L. Leidy (of Pepper, Bodine, Stokes & Schoch), both of Philadelphia, Pa., and George A. Kershner (of Zieber & Snyder), of Reading, Pa., for defendant Glen-Gery Shale Brick Corporation and its officers.

BARD, District Judge.

This action was instituted by plaintiff against Glen-Gery Shale Brick Corporation, its officers, Fallston Brick Company, A. A. Squier, Philadelphia representative of these two firms, and a number of defendants trading as S. Margolis, for treble damages resulting from the alleged violation by these defendants of the Sherman and Clayton Acts, 15 U.S.C.A. § 1 et. seq. and 38 Stat. 730. All of the defendants have filed motions to dismiss the complaint.

The complaint alleges that plaintiff is engaged in the business of selling in interstate and intrastate commerce lumber, sand, cement and other building materials, and maintains his offices in Philadelphia. Defendants Glen-Gery and Fallston are brick manufacturers located in Pennsylvania and conducting an interstate business. Both firms are represented by the defendant Squier as their Philadelphia sales agent. The defendants Margolis are a competitor of the plaintiff, maintaining offices near those of the plaintiff in Philadelphia, and likewise sell building materials in interstate commerce.

In October, November and December of 1941 plaintiff placed orders with and received deliveries of brick from Glen-Gery. At that time he advised Glen-Gery and Squier that he had an established business requiring delivery of supplies to New Jersey and Delaware, and he was assured by them that Glen-Gery would make deliveries of any orders placed by him with it. In reliance upon such assurance plaintiff made extensive alterations in his office building and storage facilities and he purchased additional land, all of which entailed an expenditure of approximately $40,000. In January and February of 1942 plaintiff sought to purchase brick from Glen-Gery and from Fallston

and was advised by these firms and by Squier, their Philadelphia representative, that because of the threats of Margolis to withdraw its account if they continued to supply plaintiff and his customers with brick, they would not make any sales to plaintiff. These refusals continued and Glen-Gery and Fallston told plaintiff that Margolis was their exclusive dealer in the Philadelphia and nearby New Jersey area and that if plaintiff wanted to purchase brick manufactured by the defendants he would have to purchase it from Margolis.

Plaintiff's first contention is that the foregoing action of the defendants constitutes a violation of Sections 1 and 2 of the Sherman Act, 15 U.S.C.A. §§ 1 and 2, which provide:

"§ 1. Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is hereby declared to be illegal. * * *."

"§ 2. Every person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States, or with foreign nations, shall be deemed guilty of a misdemeanor * * *."

■ That plaintiff's complaint fails to set forth a violation of these sections of the Sherman Act is clear. The fundamental element to establish a violation of those sections of that act is the intent or effect of creating a monopoly or unduly restraining trade in a particular commodity, and thereby to affect adversely the public interest. The complaint contains no allegation that any or all of the defendants have such control over the supply of brick in the Philadelphia area that as a result of the refusal of the defendant manufacturers to sell brick directly to plaintiff, he is unable to purchase brick for his business. The sole charge is that defendant manufacturers refuse to sell directly to plaintiff and sell their products in the Philadelphia area exclusively to the defendants Margolis. This does not make out a violation of the Sherman Act. The Sherman Act does not deprive a manufacturer of the right to sell his own customers in the business in the absence of a showing that he has combined with others with the intent of affecting or destroying the right of freedom to trade. United States v. Colgate & Company, 250 U.S. 300, 39 S.Ct. 465, 63 L.

Ed. 992, 7 A.L.R. 443; Great Atlantic & Pacific Tea Co. v. Cream of Wheat Co., 2 Cir., 227 F. 46. Said the Supreme Court in the Colgate case at page 307 of 250 U.S., at page 468 of 39 S.Ct., 63 L.Ed. 992, 7 A.L.R. 443: "The purpose of the Sherman Act is to prohibit monopolies, contracts and combinations which probably would unduly interfere with the free exercise of their rights by those engaged, or who wish to engage, in trade and commerce—in a word to preserve the right of freedom to trade. In the absence of any purpose to create or maintain a monopoly, the act does not restrict the long recognized right of trader or manufacturer engaged in an entirely private business, freely to exercise his own independent discretion as to parties with whom he will deal."

Plaintiff's second contention is that the actions of the defendants are in violation of the Robinson-Patman Amendment to the Clayton Act, 15 U.S.C.A. § 13, which makes it unlawful for a person engaged in interstate commerce "to discriminate in price between different purchasers of commodities of like grade and quality, * * * where the effect of such discrimination may be substantially to lessen competition or tend to create a monopoly in any line of commerce, or to injure, destroy, or prevent competition with any person who either grants or knowingly receives the benefit of such discrimination, or with customers of either of them." This section further provides that nothing contained therein "shall prevent persons engaged in selling goods, wares, or merchandise in commerce from selecting their own customers in bona fide transactions and not in restraint of trade."

■ Plaintiff's arguments that his past purchases from Glen-Gery make him a "purchaser" within the meaning of this section and that defendant manufacturers' refusal to sell him while selling to Margolis constitutes a "discrimination" between "purchasers" in violation thereof cannot be sustained. In Shaw's, Inc., v. Wilson-Jones Co., 105 F.2d 331, the Circuit Court of Appeals for this circuit construed this section flatly to the contrary. In that case the plaintiff was a dealer in supplies who had made purchases for three years from the defendant and who had planned to bid upon a contract to supply certain materials to the Registration Commission of Philadelphia. Defendant repeatedly promised to quote to the plaintiff prices at which it would supply certain materials required un-

der this contract, but subsequently refused to do so and quoted prices to a company competing with plaintiff and to that company only, which thereupon was successful in obtaining the contract. In upholding the action of the District Court in dismissing a complaint alleging violation of this section of the Clayton Act Judge Biggs said at page 333 of 105 F.2d:

"The appellant contends that the appellee has discriminated 'in price' between different purchasers because the appellant refused to quote prices. The phrase 'to discriminate in price', employed in Section 2 (a) considered by itself and entirely out of its context, might be deemed to include a refusal to offer a price to a customer upon goods which the latter desired to offer for resale. Such a conclusion is insupportable, however, after consideration of other language of the section. The discrimination in price referred to must be practiced 'between different purchasers'. Therefore at least two purchases must have taken place. The term purchaser means simply one who purchases, a buyer, a vendee. It does not mean one who seeks to purchase, a person who goes into the market-place for the purpose of purchasing. In other words, it does not mean a prospective purchaser, or one who wishes to purchase, as the appellant contends.

"The appellant in its brief lays emphasis upon the fact that the appellee had sold supplies to it in the past and had promised to quote prices so that the appellant might bid upon Registration Commission contract. In short, the appellant contends that it was a customer of the appellee's and therefore a purchaser. Section 2 of the Act was designed, however, to prevent interference with the current of commerce. For the provisions of the Section to be operative, goods or commodities must be in the flow of commerce, or services must have been rendered or have been contracted to be rendered in connection with goods or commodities so placed. We may surmise that if the goods or commodities are not wholly within that flow, they at least must be touched by it, affected by it, so to speak. This we think to be the limitation imposed by Congress. Past purchases or conversations in respect to possible future purchases are insufficient."

■ Pursuant to a stipulation of all parties, the complaint was amended and it was agreed that the briefs and arguments on the motions to dismiss should be considered as if made to the amended complaint. In the amended complaint plaintiff sets forth that Glen-Gery is the maker of a particular type of brick identified as "Bartex"; that because of its superior qualities, design and color it is in great demand in the building industry, and that this "type brick" is required in the "major portion of building contracts"; that defendant Glen-Gery controls its sales and distribution; and that defendant Glen-Gery sells it to Margolis but refuses to sell it to the plaintiff with the purpose of lessening competition and creating a monopoly therein. It is alleged that this constitutes a violation of the Clayton Act as amended by the Robinson-Patman Amendment, to which the decision of the Circuit Court of Appeals in the Shaw case, supra, would seem to be a sufficient answer.

Inasmuch as plaintiff has failed to set forth in his complaint any violation of the Sherman or Clayton Acts, the defendants' motions to dismiss the complaint are granted.