Philip KLEIN, Plaintiff,

v.

The LIONEL CORPORATION, a New York corporation, Rosenbaum's, Inc., a Delaware corporation, John Wanamaker Wilmington, Incorporated, a Delaware corporation, Sears, Roebuck and Co., a New York corporation, and Strawbridge & Clothier, a Pennsylvania corporation, Defendants.

Civ. A. No. 1671.

United States District Court
D. Delaware.

Jan. 18, 1956.

Clement C. Wood (of Young & Wood), Wilmington, Del., for defendant Rosenbaum's Inc.

Henry M. Canby and James T. McKinstry (of Richards, Layton & Finger), Wilmington, Del., and Harry E. Sprogell and Joseph Ewing (of Saul, Ewing, Remick & Saul), Philadelphia, Pa., for defendant John Wanamaker Wilmington, Inc.

Richard F. Corroon (of Berl, Potter & Anderson), Wilmington, Del., and J. F. Cleff (of Lederer, Livingston, Kahn & Adsit), Chicago, Ill., for defendant Sears, Roebuck & Co.

Edwin D. Steel, Jr., and William S. Megonigal, Jr. (of Morris, Steel, Nichols & Arsht), Wilmington, Del., and Thomas B. K. Ringe, Miles W. Kirkpatrick and Frank L. Luce (of Morgan, Lewis & Bockius), Philadelphia, Pa., for defendant Strawbridge & Clothier.

RODNEY, District Judge.

This is an action for treble damages under the Robinson-Patman Act of 1936.[1] Present questions arise from motions for summary judgment which have been filed on behalf of all parties. The facts will be here set out only in such detail as may be necessary to understand the issues involved.

Klein, the plaintiff, is a retailer in Wilmington, Delaware. Klein, among other items dealt in, sells toy electric trains manufactured by Lionel, one of the defendants. Klein sells in Wilmington in competition with Rosenbaum, Wanamaker, Sears and Strawbridge, the remaining defendants. Klein does not and has not purchased any merchandise directly from Lionel, the manufacturer and defendant. Klein purchases his Lionel products from General Electric Supply Co. and Edward K. Tryon, jobbers or middlemen, and at a discount from the retail price of 40 per cent. It is alleged that Lionel, the manufacturer, at the times complained of maintained

John Van Brunt, Jr., and David Snellenburg, II (of Killoran & Van Brunt), Wilmington, Del., for plaintiff.

Thomas Cooch and Thomas S. Lodge (of Connolly, Cooch & Bove), Wilmington, Del., for defendant Lionel Corp.

1. 15 U.S.C.A. § 13.

a uniform schedule of discounts as follows:

(a) Chain stores and mail order houses     40% and 20%
(b) Department stores     45%
(c) Miscellaneous accounts     40% and 5% [2]

Lionel sells to the jobbers or middlemen such as General Electric Supply Co. and Edward K. Tryon with the same discount (40 and 20%) that it sells to chain stores and mail order houses.

All parties have filed motions for summary judgment as follows:

(a) Klein filed a motion for summary judgment against Lionel alone. This motion was abandoned at the argument and motion denied, and is not further considered herein.

(b) (1) Lionel (together with all of the other defendants) has moved for summary judgment on the ground that no cause of action exists in Klein because it is apparent and conceded that Klein is not a purchaser from Lionel and, it is contended, that this is required by the statute.

(b) (2) Lionel's motion is based on an additional ground that no recoverable damages are alleged by Klein.

(c) (1) As indicated all the remaining defendants, Rosenbaum's Inc., John Wanamaker, Wilmington, Incorporated, Sears Roebuck & Co., and Strawbridge & Clothier have moved for summary judgment on the ground that Klein is not a purchaser from Lionel.

(c) (2) The defendants, other than Lionel, have moved for judgment on the additional ground that

the action as to them is based upon their knowingly having accepted an unlawful discount whereas, it is alleged, that it is clearly shown by the plaintiff himself that no such knowledge was had by them.

The main question arises from the motion of all the defendants largely based upon the established fact that Klein, the plaintiff, is not and has not been a purchaser of goods from Lionel, the defendant charged with making unlawful discriminations.

Before considering the language of the Act under which the claim of the plaintiff is based, we must first definitely determine the state of facts and the contentions of the plaintiff with reference to which the law must be applied.

Lionel, the manufacturer, as above stated, sells to chain stores and mail order houses at a discount from the retail price of 40% plus 20% (equivalent to 52%); it sells to jobbers or middlemen at precisely the same discount of 40% plus 20%. Klein, the plaintiff, does not and has not bought from Lionel. He buys and has bought only from the jobber or middleman at a discount of 40%.

Klein contends that since he is in competition as a retailer with the chain stores, mail order houses and department stores he is entitled to the largest discount as enjoyed by any of them, viz., 40% plus 20%. He contends that since he can only buy from a middleman at a discount of 40% and since the middleman must, economically, make a profit on the sale to him, that the discount to the chain stores and mail order houses is discriminatory.

The statute, under which the complaint is filed, is set out in the footnote.[3] The case against Lionel, the

2. These discounts would amount as follows: (a) 40 and 20% = 52%; (b) 45%; (c) 40 and 5% = 43%.

3. 15 U.S.C.A. § 13(a):
"It shall be unlawful for any person engaged in commerce * * * to discriminate in price between different pur-

chasers of commodities of like grade and quality * * * and where the effect of such discrimination may be substantially to lessen competition * * * or to injure, destroy, or prevent competition with any person who either grants or knowingly receives the benefit of such discrimination, or with customers of ei-

manufacturer, is largely founded on Section 13(a) and as against the other defendants on Section 13(f).

I am of the opinion that under Section 13(a) of the Robinson-Patman Act, as consolidated into Title 15 U.S.C.A., it is requisite in order to show any actionable unlawful conduct in a discrimination in price that there must be two purchases from the party charged with such discrimination and that such discrimination involve two purchasers. This is (a) shown by the language of the Act; (b) it is buttressed by the clear legislative history of the Act, and (c) it is so construed by the courts. The Act states that "It shall be unlawful for any person engaged in commerce * * * to discriminate in price between different purchasers of commodities of like grade and quality * * *." This clearly indicates two purchases from the same seller and is accentuated by Section (e) where the prohibited discrimination is spoken of as "in favor of one purchaser against another purchaser".

The legislative history of the Robinson-Patman amendment with equal clarity indicates that the purpose of the Act was to "suppress more effectively discriminations between customers of the same seller." This is the exact language of the Senate Committee on the Judiciary Report No. 1502, 74th Congress, 2nd Session, January 16, 1936. The various items of legislative history as set out in the footnote [4] will not be discussed in detail. There can be no doubt of the intention of the Act and that such intention is that when a vendor has two or more purchasers he shall exercise no discrimination between them.

The cases have uniformly held that the Act contemplated two purchasers. Shaw's, Inc., v. Wilson-Jones Co., 3 Cir., 105 F.2d 331. In A. J. Goodman & Son, Inc., v. United Lacquer Mfg. Corporation, D.C., 81 F.Supp. 890, 892, it is said: "There must be actual sales at two different prices to two different actual buyers." [5]

It is conceded that the plaintiff, Klein, is not actually a purchaser from Lionel, the manufacturer and defendant, and never has been such purchaser. The plaintiff, in order to show that he comes within the designation of "purchaser", seizes upon the words "or with customers of either of them" as found in the statute. I think the use of this language for the given purpose is inappropriate. The Act prohibits discrimination in price between two purchasers from the seller. This discrimination, however, by the Act is made actionable when the effect of it is to lessen competition with any person who grants or knowingly receives the benefit of such discrimination or "with customers of either of them". The language clearly is not meant to define "purchaser" but to indicate the conditions under which a discrimination is actionable, viz., when the effect of any discrimination is an injury to competition "with any person who either grants or knowingly receives the benefit of such discrimination, or with customers of either of them * * *."

The plaintiff, however, cites cases in which, as he contends, a retailer purchasing from a jobber has been recog-

ther of them * * *. And provided further, That nothing contained in sections 12, 13, 14–21 and 22–27 of this title shall prevent persons engaged in selling goods, wares, or merchandise in commerce from selecting their own customers in bona fide transactions and not in restraint of trade * * *."

13 (f) "It shall be unlawful for any person engaged in commerce, in the course of such commerce, knowingly to induce or receive a discrimination in price which is prohibited by this section."

4. H. R. Committee on Judiciary Report No. 2287, 74th Congress Congressional Record, Feb. 14, 1936, April 28, 1936 (p. 6281), April 29, 1936 (p. 6333), May 4, 1936 (p. 6624), May 21, 1936, May 25, 1936 (p. 7886), May 27, 1936 (p. 8114).

5. Chicago Seating Co. v. S. Karpen & Bros., 7 Cir., 177 F.2d 863; Chicago Sugar Co. v. American Sugar Refining Co., 7 Cir., 176 F.2d 1, 7; Sorrentino v. Glen-Gery Shale Brick Corp., D.C., 46 F.Supp. 709

nized as a "purchaser" from the manufacturer. These cases are collected in the footnote.[6]

These cases represent proceedings before the Federal Trade Commission acting under 15 U.S.C.A. § 21 and looking toward a "cease and desist order" of that Commission. In the cited cases where the manufacturer dealt with a jobber, and a retailer from such jobber was held to have had some relationship to the manufacturer, it appeared that the manufacturer had either a direct actual relationship with the retailer or that it exercised a control over the relations between the jobber and the retailer. No such situation exists here. No direct dealings have been alleged or shown between Lionel and the plaintiff nor any measure of control by Lionel over the dealings of any jobber.

The defendants contend that since it is clear that the plaintiff is not and never has been one of two necessary purchasers from Lionel that therefore no cause of action rests with him. They contend, in effect, that no cause of action rests with the plaintiff in the absence of a vendor-vendee relationship with Lionel, charged with the discriminations.

■ The Robinson-Patman Act[7] by Section 2, with its parenthetical subsections, is expressly amendatory of the Clayton Act and becomes a part of such Act and a part of the, so-called, anti-trust laws. Section 4 of the Clayton Act, 15 U.S.C.A. § 15, provides:

> "Any person who shall be injured in his business or property by reason of anything forbidden in the anti-trust laws may sue therefor * * * without respect to the amount in controversy, and shall recover three-fold the damages by him sustained, and the cost of suit, including a reasonable attorney's fee."

Assuming, as we must, that a discrimination under the Robinson-Patman amendment must embrace or include at least two purchases from the same seller, is it clear that a person who may have been injured by such discrimination must, himself, have been one of the original purchasers? Or, assuming that one of two or more purchasers from a manufacturer was himself a jobber or wholesaler who was discriminated against, may a retailer purchasing from such jobber and who, himself, may have been injured in his business by the original discrimination, maintain his action under 15 U.S.C.A. § 15?

■ The only right of action given to a private individual to recover under the anti-trust laws for a violation of 15 U.S.C.A. § 13(a) is under 15 U.S.C.A. § 15.[8] Thus, a jobber purchasing, with others, from a manufacturer and who was discriminated against under 15 U.S.C.A. § 13(a) would institute his suit under 15 U.S.C.A. § 15. This, however, does not solve the question as to whether a retailer who was not a purchaser from the manufacturer would himself have a right of action against such manufacturer who was guilty of discrimination under 15 U.S.C.A. § 13(a).

It seems unnecessary to further pursue this subject. Here the plaintiff purchased from one or more jobbers. No jobber has been discriminated against by the manufacturer as every jobber concededly got the maximum discount of 40 and 20%. The plaintiff does not contend that the jobber from whom he purchased was discriminated against but that he, the retailer, was discriminated against because as a retailer he has not received as high a discount as any purchaser direct from the manufacturer. There is, I think, a necessary relationship between the rights of the plaintiff retailer and the rights of the jobber from

6. Matter of Luxor, 31 F.T.C. 658; Matter of Kraft-Phenix Corporation, 25 F.T.C. 537; Matter of Dentists' Supply Co., 37 F.T.C. 345; Elizabeth Arden, Inc., v. Federal Trade Commission, 2 Cir., 156

F.2d 132; Standard Oil Co. v. Federal Trade Commission, 7 Cir., 173 F.2d 210.

7. 49 Stat. § 1526.

8. Formerly Section 4 of the Clayton Act.

whom he purchased and from whom his rights accrued.

■ There must be a proximate relationship between the injury to his business, of which the plaintiff complains, and the alleged illegal act of the defendant, which is asserted as the cause of the injury. The injury must be the natural or probable effect of the asserted illegal act.[9] There can be no such effect when the injury, claimed by discrimination, is insulated from the alleged cause by the interposition of the jobber who suffered no discrimination of any kind.

It will be borne in mind that the chain stores, mail order houses and all jobbers are given the same and maximum discount of 40 and 20%. The plaintiff contends that as a retailer and purchaser from a middleman and in competition with chain stores and mail order houses, he is discriminated against unless he receives, likewise, a discount of 40 and 20%. In effect, he contends that in order to obtain the same discount that the chain stores and mail order houses enjoy and at the same time allow a reasonable profit to the middleman, or jobber from whom Klein must purchase, that the discount allowed to the middleman or jobber must be considerably in excess of that allowed to chain stores and mail order houses. It is difficult to see, however, how the conclusion contended for would not result in a flagrant violation of the Robinson-Patman Act and accomplish precisely that which the Act was intended to prevent, viz., a discrimination in price between two purchasers from the same seller.

Since there is no discernible discrimination between the mail order houses, chain stores and the jobbers or middlemen from whom the plaintiff purchases and they all receive the same and maximum discount and because the plaintiff claims that since he is in competition in sales he is entitled to this maximum discount and is discriminated against unless he gets it, he must if he cannot otherwise obtain the maximum discount, in the final analysis, contend that he and all other retailers are entitled to be direct purchasers from the manufacturer and thus obtain the highest discount. Appreciating that in the consideration of anti-trust cases involving discriminations, difficulties arise because of inability of a party to become a purchaser or refusal of a party to become a vendor, yet no case has been found which controls the right of a party to deal with such persons as he chooses under the circumstances here present. As said in U. S. v. Colgate:[10]

"In the absence of any purpose to create or maintain a monopoly, the act [Sherman] does not restrict the long recognized right of trader or manufacturer engaged in an entirely private business, freely to exercise his own independent discretion as to parties with whom he will deal".

The Act under discussion, 15 U.S.C.A. § 13(a), states that:

"nothing contained in section * * * 13 * * * shall prevent persons engaged in selling goods, wares, or merchandise in commerce from selecting their own customers in bona fide transactions and not in restraint of trade".

Now, of course, every refusal to sell to any customer is to some small degree and pro tanto a restraint of trade, but here no facts appear which show any creation or maintenance of monopoly or unreasonable restraint of trade, and this is plainly shown by the plaintiff, himself, who lists in this immediate locality a number of competing agencies and all direct purchasers from the manufacturer.

In Great Atlantic & Pacific Tea Co. v. Cream of Wheat Co.,[11] it is said:

9. Sullivan v. Associated Billposters etc., D.C., 272 F. 323, 328; Ebeling v. Foster & Kleiser Co., D.C., 12 F.Supp. 489, 491.

10. 250 U.S. 300, 307, 39 S.Ct. 465, 468, 63 L.Ed. 992.

11. 2 Cir., 227 F. 46, 49.

"Before the Sherman Act it was the law that a trader might reject the offer of a proposing buyer, for any reason that appealed to him; it might be because he did not like the other's business methods, or because he had some personal difference with him, political, racial, or social. That was purely his own affair, with which nobody else had any concern. Neither the Sherman Act, nor any decision of the Supreme Court construing the same, nor the Clayton Act, has changed the law in this particular. * * *"

Of course, in determining to whom he would sell, the vendor may not, by his action, violate either the letter or spirit of any Act of Congress.

The right of a vendor, under ordinary circumstances and subject to exceptions, to select his purchaser under the anti-trust laws has been recognized by my Associate, Judge Leahy, in Camfield Mfg. Co. v. McGraw Electric Co., D.C., 70 F. Supp. 477, 481.

The Matter of Bird & Son, Inc., 25 F.T.C. 548, has much of interest. There, as here, sales were made to mail order houses and to jobbers for resale to retailers. Direct sales to retailers had been discontinued. There, as here, the price to mail order houses and to jobbers was the same. It was held that the Act (being the same as here involved)

"does not purport to interfere with the right of the seller to select his customers. He may discriminate in the choice of his customers. Not until there is a discrimination in price among those chosen does Section 2(a) of the Act have any application * * *." [12]

■ I am of the opinion that a plaintiff has no cause of action for a discrimination under 15 U.S.C.A. § 13(a), where it appears that the plaintiff was not a purchaser from the seller but a retailer purchasing from a jobber, and where it appears that the seller sold to chain stores, mail order houses and jobbers (including the jobbers from whom the plaintiff bought) at exactly the same price and subject to the same discounts.

■ In the briefs of the parties discussion was had solely of Section 13 with its parenthetical subdivisions and particularly 13(a). At the argument Section 13a (without any parenthesis and an entirely different section) was mentioned with some degree of reliance. It was Section 3 of the Robinson-Patman Act inserted as an amendment by Senator Borah. The pertinent portion of the Section is set out in the footnote but will not be considered at length. [13] I think the section has no bearing upon the facts here present. To me it is clear that the "competitors" mentioned in the section means competing purchasers from the same seller and does not refer to competitors in the ultimate sale where the property has passed through a jobber and into the hands of a retailer. This is plainly shown by the legislative history, especially the remarks of Senator Borah who introduced the amendment. [14] The matter sought to be prevented was the making of a discount or rebate to one purchaser without making the same discount to any other purchaser, and to make such discrimination a criminal offense. Representative Patman, the co-author of the Act, in his book the "Robinson-Patman Act", [15] at page 261, reaches the same conclusion.

12. 25 F.T.C. 548, 553. See also "Refusal to deal under the Federal Anti-Trust Laws," 103 U. of Pa.L.Rev. 847, 849.

13. "It shall be unlawful for any person engaged in commerce, in the course of such commerce, to be a party to, or assist in, any transaction of sale, or contract to sell, which discriminates to his knowledge against competitors of the purchaser, in that, any discount, rebate, allowance, or advertising service charge is granted to the purchaser over and above any discount, rebate, allowance, or advertising service charge available at the time of such transaction to said competitors in respect of a sale of goods of like grade, quality, and quantity; * * *." 15 U.S.C.A. § 13a.

14. Congressional Record, April 29, 1936, p. 6346.

15. Renold Press, N.Y.1938.

Any other conclusion would make it impossible for a manufacturer to sell his product to a mail order house or chain store and also to sell to a jobber even at the same price, since such jobber sells to a retailer at some profit to himself and the ultimate sale to the consumer could not be upon the same terms. If the section had any reference to a retailer buying from a jobber, it would allow the jobber to determine the parties entitled to a treble damage suit against the manufacturer dependent upon the percentage of profit with which the jobber was content.

Summary judgment in behalf of the defendants and against the plaintiff must be entered.

The foregoing conclusion makes unnecessary the consideration of other grounds for summary judgment advanced by the several defendants.

An appropriate order may be submitted.