## CIRCUIT COURT OF TAZEWELL COUNTY

Commonwealth Life
Insurance Co.

v.

Clinch Valley
Community Hospital

October, 1982

Case No. (Chancery) 7513

By JUDGE ROBERT L. POWELL

Commonwealth Life Insurance Company (Commonwealth Life) filed a bill of complaint against Clinch Valley Community Hospital, Inc. (Clinch Valley) on February 16, 1979, alleging that Clinch Valley was discriminating against Commonwealth Life in that it was applying a different charge to different purchasers of the same services in violation of Code § 59.1-9.7.

Commonwealth Life is a Virginia corporation chartered under Code § 38.1-496 *et seq.* and is engaged in selling hospital insurance. Clinch Valley is one of a group of hospitals authorized by statutes to conduct within a geographical area, through a nonstock corporation as agent for them, a plan or plans for furnishing prepaid hospital and similar or related services. Code §§ 38.1-801, 38.1-811, and 38.1-822.1 (1980 Cum. Supp.). Under statutory framework, all hospitals and nonstock corporations participating in such a plan shall be jointly and severally liable on all contracts made for the purposes of the plan by the nonstock corporate agent. Code § 38.1-814.

Blue Cross of Southwestern Virginia (Blue Cross) is the statutory agent for the group of hospitals of which Clinch Valley is a participant. Without objection from either party, Blue Cross was permitted to file a post-hearing brief as *amicus curiae*. As the statutory agent for the group of hospitals, Blue Cross negotiates a contract providing rights and obligations of the participants in the prepaid plan. Pursuant to its authority under this contract, Blue Cross then collects subscription dues from individuals and groups wishing to purchase hospital services on a prepaid plan. Blue Cross also negotiates a contract with each participating hospital providing for a prepaid interim per diem rate that is adjusted retroactively at agreed intervals on the basis of allowable charges.

Commonwealth Life writes a hospital policy that provides for payment of a per diem rate and provides coverage similar to that provided in subscription contracts written by Blue Cross. Though there is no contract that binds Clinch Valley to negotiate with Commonwealth Life, the two have negotiated an agreement each year for a fixed per diem rate to be paid for services rendered by Clinch Valley to Commonwealth Life's insureds. Before Commonwealth Life can make payments to Clinch Valley, its insured must make an assignment of benefits.

In 1977, Commonwealth Life paid Clinch Valley a predetermined per diem rate of $140.00; Blue Cross paid a pre-paid interim per diem of $116.00 which was adjusted retroactively to $149.00. In 1978, Commonwealth paid in January a per diem rate of $151.00 and settled in February for its predetermined per diem rate of $165.00; Blue Cross paid a retroactively negotiated per diem rate of $155.00. In January, 1979, Clinch Valley proposed to Commonwealth Life a fixed or predetermined per diem rate of $200.00 plus charges for certain specified services. Blue Cross began the year with a prepaid interim per diem rate of $155.00 which was subject to retroactive adjustment. The proposal was unacceptable to Commonwealth Life and this suit followed. A comparison of rates for 1979 cannot be stated as no payments were made by Commonwealth Life under the proposal, and the rate for Blue Cross would not be determined until the end of the contract period.

A temporary restraining order was granted by this Court on March 19, 1979, and Commonwealth Life continued under the 1978 rate of $165.00 pending disposition of this litigation.

Clinch-Valley deals with numerous third-party hospital and health insurance companies, such as Commonwealth Life. Forty percent of Clinch Valley's patients are Medicare/Medicaid patients, fifteen percent are Blue Cross patients. Less than one percent are uninsured or "self-pay" patients. The remaining 44 percent are persons insured by third-party health insurance companies, including Commonwealth Life, with approximately one percent of the patient load. A desired profit of ten percent before taxes cannot be attained from reimbursements from Medicare/Medicaid, Blue Cross, and Commonwealth Life. Self-paying patients and the other third-party indemnitors whose patients are billed for services rendered provide sufficient income to enable Clinch Valley to attain its desired profit.

In this suit, Commonwealth Life contends that it and Blue Cross are competitors in the insurance field (a fact agreed to by both Clinch Valley and Blue Cross); that both are purchasers of similar services from Clinch Valley; that Clinch Valley agrees to a per diem rate for Blue Cross subscribers that is lower than the per diem rate charged or proposed to Commonwealth, and that such conduct is in violation of Code § 59.1-9.7.

Clinch Valley contends that the conduct at issue is statutorily exempt from the price discrimination provision; that it has not violated that provision because Commonwealth Life and Blue cross are not similarly situated purchasers and their reimbursement rates are not negotiated with Clinch Valley in comparable transactions; that there are functional differences between Blue Cross and Commonwealth Life and that Commonwealth Life is not a purchaser within the meaning of the Virginia Antitrust Act.

Evidence was taken on August 8, 9, and 10, 1979, and the parties submitted briefs. Upon consideration of the evidence and briefs of counsel, the court is of the opinion that the temporary restraining order should be dissolved and that Commonwealth Life's bill of complaint should be dismissed.

The Virginia Antitrust Statute, Code § 59.1-9.7, is substantially the same as the federal Robinson-Patman

Act, 15 U.S.C. § 13, and is to be applied and construed to effectuate its general purposes in harmony with judicial interpretation of comparable federal statutory provisions. Code § 59.1-9.17. The Virginia statute provides, in part:

> (a) It is unlawful for any person engaged in commerce, either directly or indirectly, to discriminate in price between different purchasers of commodities or services of like grade and quality, where either or any of the purchasers involved in such commerce are in competition, where such commodities or services are sold for use, consumption, or resale within the state, and where the effect of such discrimination may be substantially to lessen competition or tend to create a monopoly in any line of commerce . . . .

Though Commonwealth Life alleges, in part, in its bill of complaint that Clinch Valley applies different rate charge schedules to different patients in its brief, it contends "that both it and Blue Cross purchase from Clinch Valley the same services for either their insureds or subscribers; that they are active competitors, and that such services are sold by Clinch Valley for use or resale . . ." The court cannot agree that either Commonwealth Life or Blue Cross is a purchaser from Clinch Valley. Both are third party indemnitors, Blue Cross as a fiscal agent whose obligation is to Clinch Valley for the payment of funds for prepaid hospital care based on allowable charges, and Commonwealth Life as a third party indemnitor whose obligation is to its insured for indemnity as provided by its policy. Neither party purchases nor consumes any services supplied by Clinch Valley, and the Court cannot agree that either party purchases medical services for "use or resale." A purchaser is one who purchases, a buyer, a vendee. *See Chicago Seating Co. v. S. Karpen & Bros.,* 177 F.2d 863 (7th Cir. 1949); *Sorrentino v. Glenn Gary Shale Brick Corp.,* 46 F. Supp. 709 (E.D. Pa. 1942). Commonwealth Life, which has no selection or control over services rendered by Clinch Valley, is not a buyer or vendee from Clinch Valley.

The Court must look to Code § 59.1-9.4(b) for activities not prohibited by the Virginia Antitrust Act which provides in part:

> (b) Nothing contained in this chapter shall make unlawful conduct that is authorized, regulated, or approved (1) by a statute of this State, or (2) by an administrative or constitutionally established agency of this State or of the United States having jurisdiction of the subject matter and having authority to consider the anticompetitive effect, if any, of such conduct . . . .

Code § 38.1-810 *et seq.* provides for the agency relationship and conduct that exist between Clinch Valley and Blue Cross and does not provide for such relationship and conduct between Clinch Valley and Commonwealth Life.

The evidence is clear that both Commonwealth Life and Blue Cross are subject to regulation, review, and supervision by the Bureau of Insurance in the State Corporation Commission which has authority to consider the anticompetitive conduct, such as the subject matter of this suit. Considering the evidence the court must conclude that the conduct complained of is authorized by statute and has been or is subject to be authorized, regulated, or approved by the State Corporation Commission.

Assuming that a "seller-purchaser" relationship existed pursuant to an agreement between Clinch Valley and Commonwealth Life during 1977 and 1978 (a period when charges to Commonwealth Life and Blue Cross were nearly equal), that relationship terminated on January 20, 1979. Thereafter, no "purchases" were made under the unacceptable proposal, and there is no evidence upon which a comparison can be made between a predetermined rate for Commonwealth Life and a retroactively determined rate for Blue Cross after January 20, 1979.

Counsel are requested to present a decree dissolving the temporary restraining order heretofore entered and dismissing Commonwealth Life's bill of complaint.